NO. 24-760

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE SECOND AMENDMENT FOUNDATION, et al.,

Plaintiffs-Appellants,

v.

ROBERT FERGUSON, individually and in his official capacity as Washington Attorney General, et al.,

Defendants-Appellees.

On appeal from the United States District Court for the Western District of Washington at Seattle, No. 2:23-cv-01554-MJP
The Honorable Marsha J. Pechman, Senior U.S. District Court Judge

## APPELLEES' ANSWERING BRIEF

ROBERT W. FERGUSON
*Attorney General*

ANDREW R.W. HUGHES, WSBA #49515
ALEXIA DIORIO, WSBA #57280
LAURYN K. FRAAS, WSBA #53238
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Andrew.Hughes@atg.wa.gov
Alexia.Diorio@atg.wa.gov
Lauryn.Fraas@atg.wa.gov

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................1

II.    STATEMENT OF THE ISSUES ....................................................3

III.   STATEMENT OF THE CASE ........................................................3

       A.  Statutory Background.......................................................3

       B.  Factual Background..........................................................5

       C.  This Action .......................................................................6

IV.    SUMMARY OF THE ARGUMENT ................................................9

V.     STANDARD OF REVIEW ............................................................12

VI.    ARGUMENT ...............................................................................14

       A.  The District Court Correctly Found that SAF's Claims Are
           Unripe ...........................................................................14

           1.  The district court's conclusion that SAF's claims are
               constitutionally unripe was colorable ...................15

               a.   SAF fail to allege chilled speech ...................16

               b.   SAF's other alleged injuries are self-inflicted and
                    speculative ..................................................22

           2.  Alternatively, SAF's claims are prudentially unripe and
               dismissal was appropriate ....................................24

       B.  Even if SAF's Suit Were Justiciable, this Court Should
           Alternatively Affirm Under Rule 12(b)(6)................................33

           1.  SAF's claims for damages are barred by absolute immunity
               ..........................................................................33

2.   Qualified immunity also bars SAF's claims ........................38

    a.   The Complaint does not plead a constitutional violation
         ..................................................................................39

         (1)   Viewpoint discrimination......................................39

         (2)   First Amendment retaliation ................................42

         (3)   Unreasonable search.............................................44

    b.   There was no violation of clearly established law ........48

C.   This Court Should Affirm the Dismissal of SAF's State Law
     Claims (Counts IV-V) ...............................................................51

     1.   SAF's abuse of process claim fails on the merits ...............51

     2.   This Court should affirm the dismissal of SAF's PRA claim
          ..................................................................................53

D.   The District Court Did Not Abuse Its Discretion in "Implicitly"
     Denying Leave to Amend Because It Dismissed *Without*
     *Prejudice* ...................................................................................55

E.   SAF Are Not Entitled to Costs and Fees Because the AGO's
     Removal Was Objectively Reasonable ......................................56

VII.  CONCLUSION..................................................................................62

# TABLE OF AUTHORITIES

## Cases

*A Forever Recovery, Inc. v. Pennfield Township*,
   No. 1:13-cv-00782-PLM, 2013 WL 9873171 (W.D. Mich. 2013)............... 61

*A Forever Recovery, Inc. v. Township of Pennfield*,
   606 F. App'x 279 (6th Cir. 2015)............................................................ 60, 61

*Abbott Laboratories v. Gardner*,
   387 U.S. 136 (1967) ..................................................................................... 14

*Academy of Country Music v. Continental Casualty Company*,
   991 F.3d 1059 (9th Cir. 2021)...................................................................... 13

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
   504 F.3d 840 (9th Cir. 2007)........................................................................ 15

*Americans for Prosperity Foundation v. Bonta*,
   594 U.S. 595 (2021) ..................................................................................... 23

*Ammex, Inc. v. Cox*,
   351 F.3d 697 (6th Cir. 2003)........................................................................ 32

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
   824 F.3d 858 (9th Cir. 2016).................................................................. 41, 43

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ..................................................................................... 49

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 13, 28, 44, 53

*Ass'n of Am. Med. Colls. v. United States*,
   217 F.3d 770 (9th Cir. 2000)................................................................. 27, 31

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*,
   10 F.4th 937 (9th Cir. 2021)........................................................................ 27

*Associates Nat. Bank v. Erum*,
    206 F. App'x 666 (9th Cir. 2006) .................................................. 61

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1988) ..................................................... 14

*Beam v. Gonzales*,
    548 F. Supp. 2d 596 (N.D. Ill. 2008) ........................................... 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................ 14

*Botello v. Gammick*,
    413 F.3d 971 (9th Cir. 2005) ..................................................... 36

*Buckley v. Fitzsimmons*,
    509 U.S. 259 (1993) ................................................................ 35

*Burns v. Reed*,
    500 U.S. 478 (1991) ................................................................ 35

*Butz v. Economou*,
    438 U.S. 478 (1978) ..................................................... 34, 36, 37

*Cal. Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003) ................................................... 15

*Casola v. Dexcom, Inc.*,
    98 F.4th 947 (9th Cir. 2024) ..................................................... 13

*CBA Pharma, Inc. v. Harvey*,
    No. 3:21-cv-00014-GFVT, 2022 WL 983143 (E.D. Ky. 2022) ............. 29, 32

*CBA Pharma, Inc. v. Perry*,
    No. 22-5358, 2023 WL 129240 (6th Cir. 2023) .............................. 30

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................ 23

*Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*,
150 F. App'x 389 (6th Cir. 2005) .................................................................. 32

*Colwell v. Dep't of Health and Human Servs.*,
558 F.3d 1112 (9th Cir. 2009) ............................................................. 25, 31

*Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ....................................................................... 46

*Edgar v. Haines*,
2 F.4th 298 (4th Cir. 2021) ............................................................................ 16

*Ellis v. Dyson*,
421 U.S. 426 (1975) ....................................................................................... 25

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................................... 56

*Fed. Deposit Ins. Corp. v. Garner*,
126 F.3d 1138 (9th Cir. 1997) ................................................................. 29, 46

*Felarca v. Birgeneau*,
891 F.3d 809 (9th Cir. 2018) ......................................................................... 49

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ....................................................................................... 22

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) ......................................................................... 41

*Fry v. Melaragno*,
939 F.2d 832 (9th Cir. 1991) ......................................................................... 34

*Garmon v. County of Los Angeles*,
828 F.3d 837 (9th Cir. 2016) ................................................................... 36, 37

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) ............................................................ 29, 30, 32

*Google, Inc. v. Hood*,
96 F. Supp. 3d 584 (S.D. Miss. 2015) ............................................................ 29

*Grand Council of the Crees (of Quebec) v. F.E.R.C.*,
198 F.3d 950 (D.C. Cir. 2000) .................................................................. 25

*Hartford v. Ferguson*,
676 F. Supp. 3d 897 (W.D. Wash. 2023) ...................................................... 43

*Hartford v. Ferguson*,
No. 3:23-cv-05364-RJB (W.D. Wash. 2023) ................................................ 19

*Hartman v. Moore*,
547 U.S. 250 (2006) ................................................................................ 44

*Haywood v. Drown*,
556 U.S. 729 (2009) ................................................................................ 26

*Hobbs v. Washington*,
335 P.3d 1004 (Wash. Ct. App. 2014) ....................................................... 54

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011) .................................................................... 41

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ........................................................................... 34, 37

*In re McVane*,
44 F.3d 1127 (2d Cir. 1995) ..................................................................... 46

*Kalina v. Fletcher*,
522 U.S. 118 (1997) ................................................................................ 38

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................... 40

*Knick v. Township of Scott*,
 588 U.S. 180 (2019) ...................................................................... 26

*Kowalski v. Tesmer*,
 543 U.S. 125 (2004) ...................................................................... 25

*Kruso v. Int'l Tel. & Tel. Corp.*,
 872 F.2d 1416 (9th Cir. 1989) ...................................................... 33

*Lacey v. Maricopa County*,
 693 F.3d 896 (9th Cir. 2012) .......................................... 35, 36, 37

*Laird v. Tatum*,
 408 U.S. 1 (1972) .......................................................................... 20

*Ledwith v. Douglas*,
 568 F.2d 117 (8th Cir. 1978) ........................................................ 35

*Lively v. Wild Oats Markets, Inc.*,
 456 F.3d 933 (9th Cir. 2006) ........................................................ 13

*Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now
 (C.L.E.A.N.)*,
 82 P.3d 1199 (Wash. Ct. App. 2004) ............................................ 52

*LSO, Ltd. v. Stroh*,
 205 F.3d 1146 (9th Cir. 2000) ...................................................... 51

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ...................................................................... 16

*Martin v. Franklin Capital Corp.*,
 546 U.S. 132 (2005) ...................................................... 57, 58, 60, 61

*McCormick v. City of Lawrence*,
 253 F. Supp. 2d 1156 (D. Kan. 2003) ..................................... 35, 37

*McGary v. Cunningham*,
 No. C13-5130 RBL-JRC, 2013 WL 5913434 (W.D. Wash. 2013) ............. 35

*Menotti v. City of Seattle*,
409 F.3d 1113 (9th Cir. 2005) ....................................................... 42

*Moor v. County of Alameda*,
411 U.S. 693 (1973) ...................................................................... 25

*Moore v. Garnand*,
83 F.4th 743 (9th Cir. 2023) ................................................... 49, 50

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ............................................. 39, 40, 42

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803 (2003) ...................................................................... 14

*National Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) ....................................................... 56

*Northup v. Dep't of Corrs.*,
No. 72256-5-I, 188 Wash. App. 1039, 2015 WL 4094233 (Wash. Ct.
App. 2015) ..................................................................................... 55

*Pahls v. Thomas*,
718 F.3d 1210 (10th Cir. 2013) ..................................................... 42

*Patel v. City of Los Angeles*,
738 F.3d 1058 (9th Cir. 2013) ....................................................... 47

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...................................................................... 38

*Polich v. Burlington Northern, Inc.*,
942 F.2d 1467 (9th Cir. 1991) ....................................................... 56

*Portland Gen. Elec. Co. v. Myers*,
No. Civ. 03-CV-1641-HA, 2004 WL 1722215 (D. Or. 2004) ...................... 32

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ...................................................................... 13

*Reich v. Mont. Sulphur & Chem. Co.*,
  32 F.3d 440 (9th Cir. 1994) ........................................................ 45

*Resol. Tr. Corp. v. Frates*,
  61 F.3d 962 (D.C. Cir. 1995) .................................................. 29, 47

*Resol. Tr. Corp. v. Walde*,
  18 F.3d 943 (D.C. Cir. 1994) ...................................................... 46

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) ................................................................... 39

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ........................................................ 24, 25, 56

*Saldivar v. Momah*,
  186 P.3d 1117 (Wash. Ct. App. 2008) ........................................ 51

*Sansotta v. Town of Nags Head*,
  724 F.3d 533 (4th Cir. 2013) ...................................................... 26

*Scott v. Hern*,
  216 F.3d 897 (10th Cir. 2000) .................................................... 34

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) ...................................................... 15

*Sea-Pac Co. v. United Food & Com. Workers Local Union 44*,
  699 P.2d 217 (Wash. 1985) ...................................... 12, 51, 52, 53

*Seattle Pacific University v. Ferguson*,
  104 F.4th 50 (9th Cir. 2024) ........................... 2, 16, 17, 18, 24, 29

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) .................................................. 47

*See v. City of Seattle*,
  387 U.S. 541 (1967) ................................................................... 47

ix

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ....................................................................... 24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................... 16

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ......................................................................... 25

*Steele v. Washington ex rel. Gorton*,
  537 P.2d 782 (Wash. 1975) .................................... 44, 45, 46, 48, 50

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .......................................... 27, 30, 31

*Strahm v. Snohomish County*,
  No. 79254-7-I, 8 Wash. App. 2d 1061, 2019 WL 1989621 (Wash. Ct.
  App. 2019) ..................................................................................... 55

*Sullivan v. Ferguson*,
  636 F. Supp. 3d 1276 (W.D. Wash. 2022) .................................... 43

*Tex. State Troopers Ass'n, Inc. v. Abbott*,
  No. A-13-CA-974-SS, 2014 WL 12479651 (W.D. Tex. 2014)........ 20, 30, 32

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ................................................ 24, 31

*TVI Inc. v. Ferguson*,
  No. C17-1845 RSM, 2018 WL 1610220 (W.D. Wash. 2018)..................... 31

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022)....2, 9, 13, 14, 15, 16, 17, 18, 20, 22, 23, 24, 29

*Twitter, Inc. v. Paxton*,
  No. 21-cv-01644-MMC, 2021 WL 1893140 (N.D. Cal. 2021) ................... 20

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ....................................................................... 53

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) ................................................................ 44, 45

*Univ. of Med. & Dentistry of N.J. v. Corrigan*,
    347 F.3d 57 (3d Cir. 2003) ................................................................ 32

*Vargas Ramirez v. United States*,
    93 F. Supp. 3d 1207 (W.D. Wash. 2015) ................................ 12, 51, 52

*Washington v. Bahl*,
    193 P.3d 678 (Wash. 2008) ................................................................ 26, 59

*Washington v. Brelvis Consulting LLC*,
    436 P.3d 818 (Wash. Ct. App. 2019) .............................................. 21

*Washington v. Miles*,
    156 P.3d 864 (Wash. 2007) ................................................................ 45

*Washington v. TVI, Inc.*,
    524 P.3d 622 (Wash. 2023) ................................................................ 31

*West v. Port of Tacoma*,
    No. 48110-3-II, 199 Wash. App. 1035, 2017 WL 2645665 (Wash. Ct. App. 2017) ................................................................ 55

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .............................................. 19, 20, 42

*Wilson v. Lynch*,
    835 F.3d 1083 (9th Cir. 2016) ................................................ 13

*Wood v. Moss*,
    572 U.S. 744 (2014) ................................................................ 40

## Statutes

28 U.S.C. § 1331 ................................................................ 60

28 U.S.C. § 1447(c) ................................................................ 12

Wash. Rev. Code § 19.09.400(1) ................................................... 4

Wash. Rev. Code § 19.86.110 ....................................................... 4

Wash. Rev. Code § 19.86.110(1) ................................................. 45

Wash. Rev. Code § 19.86.110(2)(a) ............................................. 4

Wash. Rev. Code §§ 19.86.110(3)(a)-(b) ..................................... 4

Wash. Rev. Code § 19.86.110(6) ................................................. 5

Wash. Rev. Code § 19.86.110(7) ................................................. 4

Wash. Rev. Code § 19.86.110(8) ............................................ 5, 21

Wash. Rev. Code §§ 19.86.110(8)-(9) .................................... 43, 48

Wash. Rev. Code § 19.86.110(9) ........................... 5, 21, 30, 47, 48

Wash. Rev. Code § 24.03A.950 ................................................. 45

Wash. Rev. Code § 24.03A.952 ............................................. 4, 45

Wash. Rev. Code 19.09 ............................................................... 3

Wash. Rev. Code 19.86 ......................................................... 4, 45

Wash. Rev. Code 24.03A ............................................................ 3

## Other Authorities

Stephen Gutkowski, *Podcast: Second Amendment Foundation's Alan
   Gottlieb Responds to Financial Questions*, The Reload (May 21, 2023),
   https://thereload.com/podcast-second-amendment-foundations-alan-
   gottlieb-responds-to-financial-questions/ ...................................... 28

Will Van Sant, *The Secret Plan to Strike Down US Gun Laws*, Mother
   Jones (July 30, 2024), https://www.motherjones.com/politics/2024/07/
   the-secret-plan-to-strike-down-us-gun-laws/ .......................... 19, 41

## I.    INTRODUCTION

The fact that a person or entity engages in political speech cannot insulate them from legal scrutiny when they violate the law. As Washington's chief law enforcement officer, the Attorney General has the responsibility to investigate potential violations of state laws governing nonprofits and charitable organizations. To that end, the Attorney General's Office opened an investigation and sent Civil Investigative Demands (CIDs) to The Second Amendment Foundation and Alan Gottlieb (collectively, SAF) for materials related to their potential violations of state law. But rather than raise any objections through Washington's statutory process, SAF voluntarily complied with the CIDs. Apparently regretting compliance and unilaterally declaring themselves "political enemies" of AG Ferguson, Opening Br. at 9, SAF now urge this Court to disregard the AG's role, and simply assume that any investigation into their affairs is *only* explained by political animus. Such skewed views of reality, however, cannot justify judicially terminating Washington's ongoing investigation.

SAF's efforts to shut down the AGO's investigation are improper and fail on the merits. As court after court has held in rejecting lawsuits just like this one, targets cannot use the courts to stymie civil investigations, particularly when

they have an effective alternative means to challenge the CIDs. SAF cannot distinguish their claims from those this Court recently dismissed in *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) or *Seattle Pacific University v. Ferguson*, 104 F.4th 50, 56 (9th Cir. 2024), nor from countless similar cases across the country.

The district court correctly applied precedent in dismissing SAF's Complaint. First, SAF's claims are constitutionally unripe because SAF have not suffered any injury in fact. Under Washington law, CIDs are not self-executing, and any cost SAF incurred in complying was voluntary. Nor do SAF's vague and cursory allegations that the CIDs chilled their speech establish injury: this Court has squarely held that such unsupported assertions do not satisfy a party's obligation to plausibly plead an injury in fact.

Second, SAF's claims are prudentially unripe because the AGO's investigation is ongoing, and SAF have ample alternative means to protect themselves. Without any final agency action to challenge, SAF cannot preemptively sue to shut down a government investigation.

Finally, although the district court had no need to reach these questions, SAF's § 1983 claims also fail both because the AG and his staff are immune from damages, and because SAF's claims are meritless. Fundamentally, SAF's

claims turn on a misread of Washington's CID process and gratuitous allegations about the AG's animus. SAF's displeasure at being investigated—a feeling they no doubt share with countless others under investigation—doesn't give them a constitutional cudgel to dictate the course of Washington's investigation. This Court should affirm dismissal or, alternatively, order the case remanded to state court.

## II.    STATEMENT OF THE ISSUES

**A.**    Did the district court err in concluding SAF's claims are constitutionally unripe because SAF fail to identify an injury in fact caused by non-self-executing CIDs?

**B.**    Did the district court err in finding SAF's claims prudentially unripe when the AGO's investigation is ongoing and SAF failed to identify any hardship from withholding judicial review?

**C.**    Alternatively, should this Court affirm because absolute immunity and qualified immunity attach to the AGO's quasi-prosecutorial role in enforcing state law, barring SAF's claims?

**D.**    Should this Court alternatively affirm because SAF failed to allege sufficient facts supporting their extraordinary claims that the AGO acted with discriminatory intent in investigating SAF?

## III.    STATEMENT OF THE CASE

### A.    Statutory Background

The Charitable Solicitations Act, Wash. Rev. Code 19.09 (CSA); the

Washington Nonprofit Corporation Act, Wash. Rev. Code 24.03A (NpCA); and

the Consumer Protection Act, Wash. Rev. Code 19.86 (CPA) all vest the AGO with broad enforcement authority over nonprofit corporations and charitable organizations. Both the CPA and NpCA specifically authorize the AGO to issue CIDs to any person or entity who may have information about a potential violation of the law, while the CSA empowers the AGO to investigate "as the attorney general deems necessary" any potential violation of the CSA. Wash. Rev. Code § 19.86.110; Wash. Rev. Code § 24.03A.952; Wash. Rev. Code § 19.09.400(1).

But the AGO's powers are not boundless; they are subject to state-court challenge and review. The CID statute requires the AGO to identify "the general subject matter of" and statute authorizing the investigation. Wash. Rev. Code § 19.86.110(2)(a); *see also* Wash. Rev. Code § 24.03A.952 (similar procedural protections under the NpCA). The AGO cannot make any request that would be "unreasonable or improper" in civil discovery. Wash. Rev. Code §§ 19.86.110(3)(a)-(b). The AGO is also generally prohibited from disclosing CID responses absent consent or a court order, ensuring that investigatory materials remain confidential. *See* Wash. Rev. Code § 19.86.110(7). Any CID recipient may contest a CID by filing a petition in superior court to modify or set aside the CID for "good cause" within twenty days after the CID has been served.

*See* Wash. Rev. Code § 19.86.110(8). Further, CIDs are not self-executing; the AGO must file an enforcement petition if the recipient fails to cooperate. Wash. Rev. Code § 19.86.110(9). Thus, only a court may order compliance with a CID.

## B.    Factual Background

Approximately three years ago, the AGO began investigating SAF for potential violations of Washington's nonprofit and charitable organization laws. 2-ER-233. The AGO—as permitted by statute—obtained court orders allowing it to issue confidential CIDs to third parties for financial and other business records. *Id.*; *see* Wash. Rev. Code § 19.86.110(6).[1] After receiving responses, the AGO served SAF with CIDs seeking information regarding their potential violations of the CPA and the CSA. 2-ER-234. SAF concede they "retained counsel to assist them with responding to the demands." 2-ER-235. At no point, however, did SAF or their counsel request that a state court modify or set aside the CIDs. *See* Wash. Rev. Code § 19.86.110(8). Instead, they voluntarily complied.

---

[1] Those orders merely "prohibit[ed] [the accountants] from notifying SAF or otherwise discussing CPD's demands." 2-ER-233.

**C.     This Action**

SAF waited an entire year before filing suit in May 2023 against Attorney General Ferguson, Assistant Attorney General (AAG) Joshua Studor, the AGO, and "John Does 1-10" (collectively referred to herein as the AGO), alleging federal constitutional violations and asking this Court to terminate the AGO's investigation. 2-ER-283. The AGO moved to dismiss because, among other reasons, SAF's claims were not ripe and failed on the merits. 2-ER-255-82. Rather than respond in federal court, SAF voluntarily dismissed their case, while simultaneously claiming that the AGO's grounds for dismissal—including its jurisdictional arguments—were "meritless." 2-ER-253-54. SAF then turned around and filed *the exact same claims* in state court. 2-ER-218-52. Because SAF raised primarily federal claims, and because SAF voluntarily dismissed those federal claims prior to the district court's review or decision, the AGO removed the case to allow the district court to determine whether it had jurisdiction, and if so, to decide the merits of the case. 2-ER-212.

SAF's Complaint spins an imaginative tale of persecution in which the AGO is investigating SAF "because Mr. Ferguson and his subordinates disagree with [SAF's] political beliefs . . . ." 2-ER-239-40. The ostensible factual bases for this conclusion are AG Ferguson's "legal record against the Trump

Administration," his "doubl[ing] the size of the Consumer Protection Division," his work on "gun control policy," his 2018 "endorse[ment] [of] a ballot measure" aimed at raising the age to purchase a semi-automatic rifle, and his defense of "gun control measures in court"—including several cases SAF brought over the last decade to challenge gun reform. 2-ER-226-27, 230-32.[2]

Asserting that the investigation might "chill Plaintiffs' First Amendment activity," 2-ER-240, SAF asked the court to declare that the AGO's CIDs violated the U.S. Constitution, enjoin the AGO from "serving or enforcing further CIDs," require the AGO to "return or destroy all nonpublic documents" obtained via CID, and award damages. 2-ER-251-52.

The AGO again moved to dismiss, raising most of the same arguments SAF had previously tried to duck by voluntarily dismissing their first suit, including that SAF's claims were constitutionally and prudentially unripe and failed on the merits. 2-ER-178. In response, SAF argued, among other things,

---

[2] SAF also spill an inordinate amount of ink in their Complaint—and again in their Opening Brief—grousing about an unrelated case the AGO brought against the Value Village thrift store chain. *See, e.g.*, 2-ER-227-29. But SAF utterly fail to explain how that case has anything do with the AGO's investigation into SAF.

that their suit was ripe, and thus properly before the district court.[3] 2-ER-138-63.

The district court granted the AGO's motion to dismiss. 1-ER-3-19. As the court explained, SAF's federal claims and state law abuse of process claim were constitutionally unripe because SAF "failed to identify an injury in fact caused by the CIDs and the AG's investigation." 1-ER-10. SAF's "Complaint does not allege that Plaintiffs' speech has been chilled," and indeed "effectively concedes that Plaintiffs' speech has not been chilled." 1-ER-10-11. The district court further concluded SAF's expenditure of legal fees and other resources when responding to the CIDs were not injury because "the costs and burdens associated with Plaintiffs' compliance with the CIDs do not evidence an injury in fact because they voluntarily chose to assume them." 1-ER-12. And the district court rejected SAF's grab bag of reputational and emotional injuries as conclusory and non-cognizable. 1-ER-12-14.

In the alternative, the district court found that SAF's claims were prudentially unripe. 1-ER-14-15. As the court explained, "the CID investigation remains ongoing—the AG's office has yet to conclude the investigation or bring an enforcement action." 1-ER-15. Accordingly, SAF failed to identify "any

---

[3] At no point did SAF file a motion to remand the case to state court.

hardship from withholding judicial consideration" at this preliminary juncture. *Id.* Rather, SAF "can bring their federal and state law claims should they challenge the CIDs" or potentially "force [the AGO to file] an enforcement action should they simply cease voluntarily complying with the investigation." *Id.*

Alternatively, the district court dismissed SAF's federal claims and their state-law abuse of process claim as prudentially unripe. 1-ER-14.[4]

SAF now appeal.

## IV.   SUMMARY OF THE ARGUMENT

The district court correctly concluded that SAF's claims are constitutionally and prudentially unripe. SAF's claims are constitutionally unripe because SAF fail to allege an injury in fact. At best, SAF allege (incorrectly) that the AGO intended to chill their speech; not that their speech was actually chilled. That "naked assertion" of chill is insufficient to demonstrate an Article III injury. *Twitter*, 56 F.4th at 1175. Nor do SAF's other supposed injuries—attorneys' fees, lost time, reputational damage, and emotional distress—suffice to show an injury because these were voluntarily

---

[4] The district court declined to exercise supplemental jurisdiction over SAF's remaining state-law claim under Washington's Public Records Act. 1-ER-18.

incurred. Because the AGO's CIDs were non-self-executing, SAF were not compelled to respond. Thus, the AGO did not cause any of SAF's alleged injuries from voluntarily complying with the CIDs. Finally, SAF's claims of reputational injuries are entirely speculative. More than two years after the AGO served CIDs on SAF's vendors, SAF remain unable to allege any actual reputational damage.

SAF's claims are also prudentially unripe. Cases like this one, in which a party sues to shut down a government investigation, are textbook examples of unripeness. SAF's claim is unripe because there is no final agency action to challenge here. In seeking to shut down the AGO's investigation, SAF ask this Court to decide issues of fact—the propriety of the AGO's investigation—before the AGO has made any final enforcement decision. And SAF entirely fail to show any hardship from this Court withholding judicial review. Again, SAF cannot identify any actual, concrete injury they are suffering. By contrast, permitting investigated parties to sue whenever they are unhappy with being investigated would fundamentally interfere with the Attorney General's duty to enforce Washington law. The district court was thus correct to find SAF's claims unripe. Accordingly, this Court should affirm and either dismiss on prudential ripeness grounds or remand to state court on constitutional ripeness grounds.

If, however, this Court concludes SAF's claims are justiciable, it should nonetheless affirm on the alternative grounds that SAF's claims are barred by immunity. Absolute quasi-judicial immunity bars SAF's demand for monetary damages under § 1983 because the Attorney General and AAG Joshua Studor are both acting in their prosecutorial capacity in investigating SAF. So too does qualified immunity bar SAF's demand for monetary damages because SAF fail to allege any constitutional violation—let alone violation of a clearly established right. This failure to state a claim also dooms their request for injunctive relief.

On the merits, SAF fall woefully short of alleging any constitutional violation. Their viewpoint discrimination claim fails because it rests entirely on bald assertions of improper motive. SAF cannot identify a similarly situated entity who is treated any differently, nor do their protestations of innocence plausibly support an inference of discrimination—particularly in the face of public information raising red flags about SAF's financial dealings. Their retaliation claim similarly fails because, again, SAF cannot plausibly allege factual information showing the Attorney General is motivated by malice, nor can they show any chilled speech. Their Fourth Amendment claim also wholly lacks merit because they make no effort to show that any requests for information

by the AGO—requests they were not compelled to answer—sought overbroad or irrelevant materials.

Finally, should this Court exercise supplemental jurisdiction over SAF's state law claims, those fail as well. There is no abuse of process here because the tort does not apply to pre-suit investigations. *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1231-32 (W.D. Wash. 2015). Nor could SAF show any misuse of "the judicial system's process" after filing suit, nor any ulterior motive behind any non-existent judicial process. *Sea-Pac Co. v. United Food & Com. Workers Local Union 44*, 699 P.2d 217, 220 (Wash. 1985). SAF's Public Records Act claim also fails because they do not allege the AGO has constructively or explicitly denied their request for any records.

In short, this case presents abundant bases for this Court to affirm the district court and either dismiss or send it back for remand to state court.

## V.    STANDARD OF REVIEW

The standard of review here depends on the argument being reviewed. After removal, if this Court determines that SAF's claims are constitutionally unripe but declines to rule on prudential ripeness, then remand is the appropriate remedy. *See* 28 U.S.C. § 1447(c). Thus, in reviewing the district court's ruling on constitutional ripeness, this Court may employ the standard of review for a

remand ruling, in which the Court "look[s] behind" the district court's order to determine whether it was "colorable" that subject matter jurisdiction was lacking. *Academy of Country Music v. Continental Casualty Company*, 991 F.3d 1059, 1067-68 (9th Cir. 2021) (cleaned up); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007). Where, as here, merits and jurisdiction are intertwined, this may involve addressing "the underlying merits of the district court's ruling" in order to "determine the district court's authority to issue [a] remand order" based on lack of subject matter jurisdiction. *Casola v. Dexcom, Inc.*, 98 F.4th 947, 953 (9th Cir. 2024) (quoting *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 938 (9th Cir. 2006)).

Should this Court consider whether SAF's claims are prudentially ripe, then de novo review is the proper standard. *Twitter*, 56 F.4th at 1173 ("The district court's decision to dismiss a case for lack of ripeness is reviewed de novo.").

On the merits, review is similarly de novo. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016). When reviewing a Rule 12(b)(6) dismissal, courts accept as true all factual allegations in the complaint but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). Rule 12(b)(6) permits dismissal for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Importantly, "the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 550 US. at 555 (cleaned up). And on review, "[t]he district court's decision may be affirmed on any ground supported by the record, even if not relied on by the district court." *Twitter*, 56 F.4th at 1173.

## VI.  ARGUMENT

### A.  The District Court Correctly Found that SAF's Claims Are Unripe

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (citation omitted). The "basic rationale" of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" as well as "to protect [] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). Constitutional issues raise particular

14

ripeness concerns, as federal courts "cannot decide constitutional questions in a vacuum." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (citation omitted); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("[P]articularly where constitutional issues are concerned, problems such as the inadequacy of the record, or ambiguity in the record, will make a case unfit for adjudication on the merits.") (cleaned up).

Ripeness has both "constitutional and prudential" components. *Twitter*, 56 F.4th at 1173. SAF's claims are unripe under both prongs, as SAF (i) fail to allege any cognizable injury with concreteness and particularity, making this case constitutionally unripe; and (ii) seek to enjoin non-final agency action that is contingent upon future factual developments, making this case prudentially unripe.

### 1. The district court's conclusion that SAF's claims are constitutionally unripe was colorable

"[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). "Whether framed as an issue of standing or ripeness," a party must show "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Twitter*, 56 F.4th at 1173 (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992)). "A concrete injury need not be tangible but 'must actually exist.'" *Id.* at 1175 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "In the First Amendment context, 'the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression.'" *Id.* at 1174 (quoting *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021)). SAF cannot, however, establish an injury in fact by vague insinuations that the AGO's investigation *might* chill their protected speech, that they have voluntarily expended legal fees to respond to a non-self-executing CID, or that third parties *may* decide not to do business with them *someday*.[5]

### a.    SAF fail to allege chilled speech

A party's "naked assertion" that its speech has been chilled is insufficient to establish constitutional injury. *Twitter*, 56 F.4th at 1174-75. This Court's recent decisions in *Twitter v. Paxton* and *Seattle Pacific University v. Ferguson* control here. In *Twitter*, Twitter sought to enjoin the Texas Attorney General

---

[5] SAF allude to pre-enforcement standing, *see* Opening Br. at 44, but nowhere do they discuss the standard for pre-enforcement standing or how they might attempt to show it. Nor could they given the relief they seek is based upon past harm. *Compare Seattle Pac. Univ.*, 104 F.4th at 56 (pre-enforcement claims are prospective, not retrospective) *with* Opening Br. at 51 (explaining that SAF seek damages for the "many concrete injuries they have *already suffered*") (emphasis in original).

from investigating Twitter's content-moderation policies and enforcing a CID. *Id.* at 1172. Twitter alleged the investigation was unlawful retaliation for protected speech. *Id.* The Ninth Circuit held that Twitter's case was not constitutionally ripe. *Id.* at 1173. Specifically, as this Court explained, Twitter's assertions that the CID and corresponding investigation "impeded" its ability to "freely make its own decisions," "chill[ed] Twitter's speech," and "forced [the company] to weigh the consequence[s] of a burdensome investigation" when making decisions, taken individually or collectively, did not satisfy Article III. *Id.* at 1175. To the contrary, Twitter's assertions were "vague" and referred only to "a general possibility of retaliation." *Id.* An employee's sworn testimony that he believed the investigation would result in "significant diminishment of the willingness of Twitter employees to speak candidly and freely in internal content moderation decisions" was likewise insufficient: the "highly speculative" statements did not show the "CID has actually chilled employees' speech or Twitter's content moderation decisions; the employee only claims that it would 'if th[e] CID and investigation were allowed to proceed.'" *Id.*

More recently, the Ninth Circuit affirmed *Twitter's* holding in *Seattle Pacific University*. 104 F.4th at 58. There, Seattle Pacific University (SPU) alleged that the Washington AG's investigation required it to "make decisions

about employment under a cloud of government investigation and impending penalties" and that it "believes that if it [did] not comply with the unconstitutional probe, then it will face serious penalties and litigation against Constitutionally protected actions." *Id.* at 57. But "[l]ike the CID in *Twitter*, the Attorney General's request for documents carries no stick: SPU would not face sanctions for ignoring it." *Id.* at 57. SPU's allegations of injury were not concrete, and the AG's request for documents "could simply be ignored." *Id.* at 58. Accordingly, this Court concluded that SPU failed to state an injury in fact. *Id.* at 57.

This case is on all fours with *Twitter* and *Seattle Pacific University.* As in those cases, SAF's Complaint makes no concrete allegation that the AGO's investigation—in the form of non-self-executing CIDs—has *actually* chilled SAF's speech. Instead, SAF speculate that the AGO "hope[s] to chill Plaintiffs' First Amendment activity," and that its "treatment of Mr. Gottlieb is designed to . . . chill the activities of SAF and the other entities . . . ." 2-ER-240, 248. As the district court noted, this is "not an allegation of actual, chilled speech." 1-ER-10. This is far less concrete than even Twitter's inadequate "naked assertion[s] that its speech has been chilled." *Twitter*, 56 F.4th at 1175. Moreover, unlike in *Twitter*, SAF do not claim their speech *will be* chilled if the AGO's investigation

18

is allowed to proceed; indeed, SAF's political activity has continued full speed during the course of the investigation. 2-ER-231, 234 (litigation filed by SAF in June 2022 after it learned of the AGO's investigation in May 2022, *Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE (W.D. Wash.)); *see also Hartford v. Ferguson*, No. 3:23-cv-05364-RJB (W.D. Wash., complaint filed by SAF Apr. 25, 2023). And by some measures, SAF's political activity has even increased in the past few years.[6]

SAF's other arguments do not rescue their deficient allegations. First, their Complaint claims "it is well established that no speech actually needs to be chilled in order for a plaintiff to bring a First Amendment claim based on a discriminatory, retaliatory investigation." 2-ER-241 (citing *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000)). But *White* doesn't address ripeness at all. And *White* involved much more severe consequences than the issuance of non-self-enforcing CIDs. *White*, 227 F.3d at 1222, 1227, 1229 (government officials demanded plaintiffs cease their speech and litigation efforts, advised them they had broken the law, threatened legal action and exorbitant fines, and publicly

---

[6] *See* Will Van Sant, *The Secret Plan to Strike Down US Gun Laws*, Mother Jones (July 30, 2024), https://www.motherjones.com/politics/2024/07/the-secret-plan-to-strike-down-us-gun-laws/ (explaining how, since 2020, the number of federal lawsuits SAF have filed as plaintiffs has jumped almost three-fold).

claimed in news media that plaintiffs had violated the law); *Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140, at *4 (N.D. Cal. May 11, 2021) (distinguishing *White* and other cases where "the potential consequences of the [government] investigation were serious," such as "imposition of a substantial fine," "arrest," or "loss of custody of a child"), *aff'd*, 56 F.4th 1170 (9th Cir. 2022). Moreover, the *White* plaintiffs "would have had no opportunity to challenge any aspect of the investigation until formal charges were brought." *Twitter*, 56 F.4th at 1177 (citing *White*, 277 F.3d at 1222). "But here," as in *Twitter*, the plaintiff "'faces no such consequence' because it can raise its First Amendment defense if [the Attorney General] moves to enforce the CID." *Id.* (quoting *Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140 (N.D. Cal. May 11, 2021)); *see also Tex. State Troopers Ass'n, Inc. v. Abbott*, No. A-13-CA-974-SS, 2014 WL 12479651, at *2 (W.D. Tex. Apr. 16, 2014) ("[T]hreatened enforcement is primarily relevant insofar as it relates to some actual chilling of a plaintiffs constitutionally protected conduct as a result of the threat . . . and Plaintiffs' Complaint contains only vague references to the notion of a chilling effect, not any specific factual allegations indicating Plaintiffs' actual conduct has been chilled or will be altered in any way going forward.") (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

Second, SAF continue to mischaracterize the CID process when they argue that they "*will* face an attorney fee award and other penalties for refusing to comply because they cannot raise any objections to the CID outside of the twenty-day window." Opening Br. at 48 (emphasis in original). The CPA provides CID recipients with an avenue to seek immediate judicial review. Wash. Rev. Code § 19.86.110(8) (recipients may file a petition in superior court to modify or set aside a CID). But a CID recipient may also decline to respond. *See* Wash. Rev. Code § 19.86.110(9). And if the recipient refuses to respond, because a CID is not self-executing, the AGO can only compel compliance by bringing an enforcement action. *Id.* In that action, recipients may raise constitutional objections to a CID. *See, e.g.*, *Washington v. Brelvis Consulting LLC*, 436 P.3d 818 (Wash. Ct. App. 2019) (considering the recipient's constitutional objections). As the district court noted, SAF conceded in their prior briefing that they would raise their constitutional objections if the AG moves to enforce the CIDs, despite their allegations now to the contrary.1-ER-11.[7]

_____

[7] SAF allege that the AGO's communications with other CID recipients regarding their right to challenge a CID beyond the 20-day window have been inconsistent, but this is irrelevant. SAF do not contend they relied on or were prejudiced by the AGO's position on that issue, and certainly do not have grounds to argue estoppel.

Finally, SAF argue that some of the plaintiffs "are non-profit political advocacy groups who exist for the sole purpose of constitutionally protected First Amendment activity" so any diversion of their resources "*necessarily* decreases the amount of First Amendment activity they can engage in." Opening Br. at 46. By that logic, any groups engaging in First Amendment activity would be immune from state law enforcement. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing."). Regardless, *Twitter* forecloses this argument because any resources SAF diverted voluntarily complying with the CID "[we]re self-inflicted" harms. *Twitter*, 56 F.4th at 1176.

### b. SAF's other alleged injuries are self-inflicted and speculative

SAF's references to reputational injuries, financial injuries, and emotional injuries are likewise insufficient to render their claims constitutionally ripe. Opening Br. at 42. SAF claim they have been "forced to expend hundreds of man hours and tens of thousands of dollars in legal fees responding to [the AGO's] CIDs" and suffered "considerable stress" as a result of the CIDs. 2-ER-245. But as discussed, SAF could have moved to set aside the CID or refused to respond. *See supra* p. 21. SAF instead chose to "retain[] counsel to assist them

with responding to the demands." 2-ER-235. SAF's decision to voluntarily cooperate with the CIDs is not an injury. *See Twitter*, 56 F.4th at 1176 ("[T]o the extent Twitter argues that any actions it has taken in response to the CID create an Article III injury, those injuries are self-inflicted because the actions were voluntary.") (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013)).

Finally, SAF's alleged reputational injuries stemming from CIDs to third parties are speculative. SAF say the AGO served CIDs on SAF vendors beginning around June 2021. 2-ER-233-34. Yet, two years later, SAF conjectured only that vendors "*may* cease to do business with plaintiffs." 2-ER-245. As to their general reputation, the AGO put gag orders into place to help protect public disclosure of the CIDs—it was only SAF's decision to commence this lawsuit that made the information public. 2-ER-82 n.1; *see also* 1-ER-12. And to the extent they allege reputational injuries from "[c]ompelled disclosure to the government" because it "risks chilling constitutionally protected associational and expressive rights," again, SAF's disclosure was *not* compelled. Opening Br. at 50 (citing *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021)). SAF's reputational injury likewise falls short.

*Twitter* and *Seattle Pacific University* make clear that alleged harms stemming from compliance with a non-self-executing CID, without more, do not

"create an Article III injury," because they are voluntarily undertaken. *Twitter*, 56 F.4th at 1176; *see also Seattle Pac. Univ.*, 104 F.4th at 57. These cases foreclose SAF's claims here. SAF have failed to plausibly allege an injury in fact, and the district court's conclusion that their claims were constitutionally unripe is more than colorable.

### 2. Alternatively, SAF's claims are prudentially unripe and dismissal was appropriate

Even if the district court erred in concluding that SAF failed to allege a plausible Article III injury to support constitutional ripeness, the district court was still correct in dismissing the suit as prudentially unripe on alternative grounds. 1-ER-14; *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000).

As a threshold matter, SAF argue that the district court "was without authority to issue alternative rulings" on the constitutional and prudential unripeness of SAF's claims. Opening Br. at 59. SAF are wrong. "While . . . jurisdictional questions ordinarily must precede merits determinations in dispositional order, . . . a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) and *Steel Co. v. Citizens for*

*a Better Environment,* 523 U.S. 83, 100-01 n.3 (1998)). Thus, a court may address justiciability questions in any order. *Ruhrgas AG*, 526 U.S. at 585. A court may also assume, without deciding, that Article III subject matter jurisdiction is met and address an alternative justiciability argument, including discretionary or prudential justiciability bars. *See Ellis v. Dyson,* 421 U.S. 426, 433-434 (1975); *Moor v. County of Alameda*, 411 U.S. 693, 715-16 (1973); *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Grand Council of the Crees (of Quebec) v. F.E.R.C.*, 198 F.3d 950, 954 (D.C. Cir. 2000) (It is "entirely proper to consider whether there is prudential standing while leaving the question of constitutional standing in doubt."). Thus, a court may conclude it does not have subject matter jurisdiction, and in the alternative, dismiss the case on prudential ripeness grounds. *See, e.g.*, *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121, 1123 (9th Cir. 2009) (affirming district court's alternative dismissal, after finding plaintiffs lacked standing, that plaintiffs' claims were also prudentially unripe).

Nor did the AGO waive its prudential ripeness argument when it removed to federal court, as SAF argue. Opening Br. at 60-63. All of the cases SAF cite for this proposition concern Fifth Amendment Takings Clause claims that are inapplicable here. As the district court carefully explained, those cases rely on

*Williamson* ripeness, a since-overruled doctrine expressly limited to Takings claims. 1-ER-16-17. Under *Williamson*, prudential ripeness turned on whether plaintiffs had first sought compensation in state court. It thus made sense that a defendant would "waive[] the state-litigation requirement by removing the case to federal court." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 544 (4th Cir. 2013). That waiver principle has no application here where SAF's claims are equally unripe in any forum. *See* 1-ER-17 ("Defendants' prudential ripeness arguments turn not [on] some exhaustion requirement, but rather on the fact that the factual record on which the claims turn is unsettled and incomplete."); *see also Washington v. Bahl*, 193 P.3d 678, 685 (Wash. 2008) (outlining how Washington state-law ripeness standard is substantively identical to federal standard).[8]

---

[8] SAF suggest that prohibiting them from raising their claims prior to an enforcement proceeding presents a "preclusion trap" like the one "decried" in *Knick v. Township of Scott*, 588 U.S. 180, 184 (2019). Opening Br. at 65. But state and federal courts have concurrent jurisdiction, and Section 1983 guarantees a *forum*, not an exclusively federal one. *Haywood v. Drown*, 556 U.S. 729, 735-36 (2009). Indeed, SAF have twice filed their Complaint in both state and federal court. If SAF's claims ever become ripe, they are not prohibited from filing in the forum of their choosing. This is also why *Knick* is inapposite—*Knick* simply made clear that a *ripe* takings claim may be heard in federal court. 588 U.S. at 189.

Prudential ripeness turns on consideration of (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (citation omitted).

As to the first ripeness factor, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). None of these components are met. SAF challenge an ongoing AGO investigation and, by doing so, ask the Court to decide issues of fact at a time when the AGO has not yet made a final enforcement determination. SAF attempt to frame their claims as turning "on acts that have already occurred—the basis and purpose State Defendants had back when they *initiated* the investigation and *issued* the CIDs." Opening Br. at 63. But opening an investigation and sending a non-self-executing CID, without more, is not a final agency action. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."). SAF ask the Court to declare an ongoing state investigation unconstitutional and enjoin hypothetical future CIDs and enforcement actions that may never come

to pass. SAF do not even contend they are subject to any pending CIDs or other investigatory devices—at best, they suggest they might be in the future. SAF's Complaint is entirely premature. Their suit is a paradigmatically unripe dispute.

SAF's allegations that the AGO's investigation is "baseless and motivated by sheer political animus" are similarly premature (and nonsense otherwise). 2-ER-238. Plainly, any claim that the AGO's investigation is "baseless" requires the completion of that investigation. But SAF ask the Court to simply infer extraordinary law enforcement bias from their *ipse dixit* contentions that they do "[n]ot understand[] the point of the investigation" and are "[a]t a loss regarding CPD's motives," and that an AAG declined "to provide any instructions on how [SAF] could bring their conduct into compliance with the law" during an active investigation. 2-ER-235-36, 239.[9] This does not meet minimum pleading requirements for "factual content that allows the court to draw the reasonable inference" of misconduct. *Iqbal*, 556 U.S. at 678; *see also Fed. Deposit Ins.*

---

[9] SAF's suggestion that they have no idea what the AGO might be investigating is belied by Mr. Gottlieb's public statements defending his entities' financial dealings. Stephen Gutkowski, *Podcast: Second Amendment Foundation's Alan Gottlieb Responds to Financial Questions*, The Reload (May 21, 2023), https://thereload.com/podcast-second-amendment-foundations-alan-gottlieb-responds-to-financial-questions/. Moreover, as detailed further below, SAF's financial disclosures contained numerous related-party transactions that the Wall Street Journal independently called "red flags" warranting an audit. *See* 2-ER-130-33; *infra* pp. 40-41.

*Corp. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (a party asking "a court [to] inquire into . . . allegations of bad faith or harassment" must "present . . . specific evidence of improper intent.") (cleaned up) (quoting *Resol. Tr. Corp. v. Frates*, 61 F.3d 962, 965 (D.C. Cir. 1995)). Similar arguments that an investigation was motivated by improper purposes were made in *Twitter*, 56 F.4th at 1172. And in *Seattle Pacific University*, 104 F.4th at 56-57. And in *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) (dismissing suit); *see also Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598 (S.D. Miss. 2015), *vacated and remanded* (May 18, 2016) (detailing allegations of retaliation). And in other cases, too. *See, e.g.*, *CBA Pharma, Inc. v. Harvey*, No. 3:21-cv-00014-GFVT, 2022 WL 983143, at *2 (E.D. Ky. Mar. 30, 2022); *Beam v. Gonzales*, 548 F. Supp. 2d 596, 605 (N.D. Ill. 2008). If threadbare allegations that an investigation was "baseless" or in bad faith were enough to make an unripe claim ripe, then anyone frustrated with being investigated could easily circumvent ripeness and bring suit to challenge state law enforcement investigations in federal court. That cannot be the law. Ultimately, SAF do not cite a *single case* concluding a challenge like this, to an ongoing governmental investigation using non-self-executing CIDs, is ripe.

To meet the second ripeness requirement, SAF must show that withholding judicial review would lead to "direct and immediate hardship" that will require "an immediate and significant change in the plaintiff['s] conduct of their affairs with serious penalties attached to noncompliance." *Stormans*, 586 F.3d at 1126 (citation omitted). Yet SAF cannot establish hardship for the same reason they cannot establish injury. *Tex. State Troopers Ass'n*, 2014 WL 12479651, at *3 ("Plaintiffs cannot establish hardship because they have not alleged their conduct has changed, or will change, in any way as a result of the Attorney General's conduct."). Moreover, SAF had and continue to have ample alternatives to protect themselves: they could have "challenge[d] the scope of" the CIDs as provided in Wash. Rev. Code § 19.86.110(8), including for the reasons raised in the Complaint, *CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240, at * 4 (6th Cir. Jan. 9, 2023); they "could raise [their] objections to the [CIDs] if [the AGO] ever brings an" action to enforce the CIDs, *Google*, 822 F.3d at 225; Wash. Rev. Code § 19.86.110(9); and, if the AGO files an enforcement action against SAF, they can litigate their alleged grievances there too.[10] Indeed, the case SAF feature in their Complaint demonstrates this point.

---

[10] Given these ample alternatives, SAF's argument that the AGO intends to "harass and drain [SAF]'s resources by drawing out the investigation indefinitely" cannot take flight. Opening Br. at 65-66.

*Compare TVI Inc. v. Ferguson*, No. C17-1845 RSM, 2018 WL 1610220, at *4
(W.D. Wash. Apr. 3, 2018) (dismissing federal suit challenging the AGO's CPA
investigation on constitutional grounds) *with Washington v. TVI, Inc.*, 524 P.3d
622, 627 (Wash. 2023) (state court merits decision on CPA claims). Lest there
be any doubt, SAF cannot seriously contend there is an "immediate hardship"
warranting prompt review by this Court, *Stormans*, 586 F.3d at 1126, when they
have sought and obtained multiple stays of the briefing schedule in this appeal,
totaling more than four months. Dkt. Entry 8.1, 13.1, 16.1.

Finally, courts also consider the hardship to the defendant and the court
from litigating unripe claims. *See, e.g.*, *Colwell*, 558 F.3d at 1129; *Thomas*, 220
F.3d at 1142. Here, the lawsuit seeks to force the AGO to justify an ongoing
investigation, and to litigate issues substantially overlapping with the merits of
the investigation when it has not made a final enforcement determination.
Allowing this case to proceed at this juncture will make every AGO investigation
susceptible to collateral attack. That is untenable.

The district court's decision is in line with numerous other dismissals on
prudential ripeness grounds of cases brought by plaintiffs like SAF seeking to
terminate ongoing investigations. *See, e.g.*, *Ass'n of Am. Med. Colls.*, 217 F.3d
at 781 (9th Cir. 2000) ("[U]ncertainties" in whether an investigation will result

in findings or enforcement "render plaintiffs' action unfit for judicial resolution at this time."); *Google*, 822 F.3d at 228 ("[N]either the issuance of the non-self-executing administrative subpoena nor the possibility of some future enforcement action created an imminent threat of irreparable injury ripe for adjudication."); *Ammex, Inc. v. Cox*, 351 F.3d 697, 709 (6th Cir. 2003) ("Enforcement of the [Michigan Consumer Protect Act] against [Plaintiff] is . . . tentative and subject to agency reconsideration."); *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 397-98 (6th Cir. 2005) ("Without knowledge of what . . . form [any enforcement action] will be, this court does not have the concrete context necessary for judicial review."); *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (holding action to enjoin an investigation was not ripe because "an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action"); *Portland Gen. Elec. Co. v. Myers*, No. Civ. 03-CV-1641-HA, 2004 WL 1722215, at *2 (D. Or. 2004); *Tex. State Troopers Ass'n*, 2014 WL 12479651, at *3; *CBA Pharma, Inc.*, 2022 WL 983143, at *3, *aff'd sub nom. CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023). As these cases overwhelmingly demonstrate, courts routinely avoid prematurely wading into

nascent disputes that might never become concrete. This Court should affirm the district court's dismissal of SAF's Complaint on prudential ripeness grounds.

## B.    Even if SAF's Suit Were Justiciable, this Court Should Alternatively Affirm Under Rule 12(b)(6)

Even if this Court were to determine that SAF's claims are justiciable, SAF's claims fail as a matter of law. First, their claims for damages are barred by absolute immunity. Second, qualified immunity applies because SAF fail to demonstrate a violation of a constitutional right that was clearly established at the time of the AGO's investigation. Third, their state law claims fail on the merits. Accordingly, SAF's claims should be dismissed and the district court's order affirmed on alternative grounds. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989) ("In reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record.").

### 1.    SAF's claims for damages are barred by absolute immunity

SAF's § 1983 suit seeks monetary damages against AG Ferguson and AAG Studor in their personal capacity. 2-ER-242, 244, 246. But both have absolute immunity for actions taken in their prosecutorial or "quasi-judicial" capacity. Absolute prosecutorial or quasi-judicial immunity is based on considerations similar to those that underlie the absolute immunity judges enjoy, including the "concern that harassment by unfounded litigation would cause a

deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Government officials whose duties include deciding whether to commence enforcement proceedings *must* be able to make such decisions free from intimidation or harassment and are therefore entitled to absolute immunity for such decisions. *Butz v. Economou*, 438 U.S. 478, 515 (1978).

This quasi-judicial immunity affords the same protection to civil enforcement proceedings as criminal ones. *Id.* Absolute immunity applies to a "government attorney's initiation and handling of civil litigation in a state or federal court." *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that . . . advocates . . . can perform their respective functions without harassment or intimidation.'" *Id.* at 837 (quoting *Butz*, 438 U.S. at 512); *see also Scott v. Hern*, 216 F.3d 897, 908-09 (10th Cir. 2000) ("[S]tate attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings are absolutely immune from suit under section 1983

concerning activities intimately associated with the judicial process.") (cleaned up). This broad immunity applies to state attorneys investigating and initiating consumer protection and other civil enforcement actions. *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978) (dismissing claims against attorneys in the Consumer Protection Division of the Nebraska AGO on the basis of absolute immunity); *McGary v. Cunningham*, No. C13-5130 RBL-JRC, 2013 WL 5913434, at *2 (W.D. Wash. 2013) (dismissing claims, on the basis of absolute immunity, against Washington AAG); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1156, 1166-67 (D. Kan. 2003) (dismissing complaint against AAGs in the Kansas AGO's Consumer Protection Division on the basis of absolute immunity).

Importantly, "[a]bsolute immunity also protects those functions in which the [attorney] acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ([A]bsolute immunity protects "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings."). "These actions need not relate to a particular trial and may even

35

be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.'" *Lacey*, 693 F.3d at 912 (citation omitted). "Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Id.* at 913 (citation omitted). These functions include the issuing of a CID or subpoena duces tecum, *see Garmon v. County of Los Angeles*, 828 F.3d 837, 844 (9th Cir. 2016), as well as the "broad discretion in deciding whether a proceeding should be brought," *Butz*, 438 U.S. at 515. What matters is that the actions "require legal knowledge and the exercise of related discretion." *Lacey*, 693 F.3d at 912 (citation omitted). Whether a lawsuit is ultimately filed is irrelevant. *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005).

The AG and his AAGs have duties as advocates for the State, including issuing CIDs to decide whether to bring an enforcement action, that are entitled to absolute immunity. The AGO has statutory authority to serve CIDs if the AGO believes such information is relevant to an investigation into a possible violation of state law—an act indisputably connected to the trial process. Indeed, the

issuance of a CID and the AGO's corresponding investigation is a core duty of the AG in his "role as advocate for the State," even though it is "preliminary to the initiation of a prosecution" and occurs "apart from the courtroom." *Lacey*, 693 F.3d at 929 (quoting *Imbler*, 424 U.S. at 431 & n.33); *see also McCormick*, 253 F. Supp. 2d at 1158 ([A]ssistant attorneys general are "absolutely immune from liability in their duties of investigating, working up, and presenting cases."). Issuing CIDs is quintessential work of a civil prosecutor and involves the "lawyerly functions of organizing and analyzing evidence and law." *Lacey*, 693 F.3d at 913; *see also Garmon*, 828 F.3d at 844 (prosecutor "entitled to absolute immunity for issuing the subpoena duces tecum").

SAF's Complaint demonstrates why absolute immunity is necessary. SAF ascribe a variety of malicious motives and unconstitutional animus to AG Ferguson and AAG Studor without any evidence that these officials' actions were improper, and without any indication that the AGO intends to enforce the CIDs or file a complaint. If premature suits like this one are permitted to proceed, the floodgates will be thrown wide open because "a defendant often will transform . . . resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Imbler*, 424 U.S. at 425; *see also Butz*, 438 U.S. at 512 (explaining that "[t]he loser in one forum will frequently seek

another, charging the participants in the first with unconstitutional animus," and "[a]bsolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation"). Absolute immunity is thus necessary here to protect the AG and staff from "harassing litigation that would divert [their] time and attention from [their] official duties" and to "enabl[e them] to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (citation omitted).

### 2.    Qualified immunity also bars SAF's claims

Even if not absolutely immune, Defendants are entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, a government official is immune from a damages suit unless the plaintiff demonstrates: (1) "a violation of a constitutional right," and (2) that the right "was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (citation omitted). Here, SAF's Complaint fails both prongs.

### a. The Complaint does not plead a constitutional violation

SAF fail to allege any facts showing how the AGO's investigation into potential violations of state law constitutes viewpoint discrimination, retaliation, or an unreasonable search in violation of the U.S. Constitution. These failures require dismissal not only of SAF's damages claims, but of their § 1983 claims in their entirety.

### (1) Viewpoint discrimination

"Viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (quotation omitted). To state a claim, a plaintiff must present facts showing that the government suppressed a plaintiff's speech "because of" the plaintiff's ideology, opinion, or perspective. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). A "bald allegation of impermissible motive" is insufficient; instead, plaintiffs must plead non-conclusory facts that allege it is "plausible, not merely possible" that the government engaged in viewpoint discrimination. *Moss*, 572 F.3d at 970.

Here, SAF's viewpoint discrimination claim rests solely on their assertion that they are aware of "no known action, investigatory or otherwise, against the

Alliance for Gun Responsibility, Grandmothers Against Gun Violence, Ceasefire, or any other anti-gun group." 2-ER-243. While disparate treatment could be used to establish discriminatory motive in some circumstances, *see Moss*, 572 F.3d at 971, SAF do not allege any of these "anti-gun group[s]" engaged in conduct warranting an investigation by the AGO. *See, e.g.*, *Wood v. Moss*, 572 U.S. 744, 762 (2014) (rejecting viewpoint discrimination claim where pro-Bush and anti-Bush demonstrators were treated differently because their respective locations posed different security risks to the President).

SAF imply that the AGO had no basis for suspecting SAF or Mr. Gottlieb of unlawful conduct, *see* 2-ER-235-36, 239-40, but this Court can look to public records that show otherwise. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018).[11] Since at least 2016, SAF has filed Form 990s with the IRS that disclose repeated related-party transactions that suggest possible self-dealing. *See* 2-ER-98, 119. For example, SAF's 2019 Form 990 shows it paid more than $400,000 to entities owned by Mr. Gottlieb, as well as $53,250 to his son and an additional $491,978 to the Service Bureau Association, another Mr. Gottlieb-associated entity. 2-ER-98, 119-20. These filings were suspicious

---

[11] As the AGO has not yet made an enforcement decision, it has not publicly disclosed the findings of its investigation. Indeed, were it not for the filing of this lawsuit, the AGO's investigation would still be confidential.

enough that the Wall Street Journal called them "red flags" warranting an audit. *See* 2-ER-130-33; *see also* Van Sant, *supra* note 6 (describing Alan Gottlieb as being known for "cashing in on right-wing causes through private companies that have business arrangements with his advocacy groups"). SAF's Complaint nowhere alleges any gun-control advocates engaged in similar conduct warranting an investigation. Thus, these "anti-gun groups" are not similarly situated.

None of the cases SAF cite in their Complaint save their viewpoint discrimination claim. Two plainly involved the government treating similarly situated parties differently. *See Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) (ordinance regarding conduct of individuals outside abortion clinics enforced differently between those facilitating access and those discouraging access); *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) (ordinance limiting the picketing, leafletting, and displaying of signs contained content-based exemptions, rendering it unconstitutional). The remaining cases included specific factual allegations raising plausible inferences that the government engaged in viewpoint discrimination. *See, e.g.*, *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) (government officials "publicly acknowledged" that its suspension of a student group's fees "resulted from [the

student group's] advocacy in support of [a ballot initiative]."); *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (police officers required people to remove anti-World Trade Organization buttons or stickers to enter restricted zone in downtown Seattle); *White*, 227 F.3d 1214 (government investigators explicitly requested neighbors who were opposed to a housing development to cease engaging in such speech).

In contrast, SAF identify no similarly situated entity and allege no facts plausibly demonstrating that AG Ferguson and AAG Studor issued CIDs "because of" SAF's Second Amendment views, as opposed to their belief that there were potential CSA or CPA violations.[12] *See Moss*, 572 F.3d at 971-72. It simply is not the case that the AGO engages in viewpoint discrimination whenever it investigates an entity that holds different political views. SAF's viewpoint discrimination claim should be dismissed.

### (2)    First Amendment retaliation

"To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's

---

[12] SAF's viewpoint discrimination claim with respect to AAG Studor fails from the start, as SAF make no allegation whatsoever that AAG Studor acted with bias. *Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013) (viewpoint discrimination requires that "each defendant" acted with discriminatory purpose).

actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n*, 824 F.3d at 867 (citations omitted).

Here, SAF identify their constitutionally protected activity of filing lawsuits. *See* 2-ER-231 (listing cases), 2-ER-244. But SAF fail to plead facts from which the Court could plausibly infer that they have been chilled from engaging in this protected activity. *Supra* pp. 18-19. Far from it, SAF have continued to file Second Amendment-related litigation against the State, including a challenge to Washington's "assault weapon" ban this past year. *See Hartford v. Ferguson*, 676 F. Supp. 3d 897 (W.D. Wash. 2023) (filed Apr. 25, 2023); *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276 (W.D. Wash. 2022) (complaint filed in June 2022, one month after issuance of CID to SAF). Nor would the issuance of a CID chill a person of ordinary firmness, given a CID recipient's ability to seek judicial review of the CID and have it set aside if it was wrongfully issued. *See* Wash. Rev. Code §§ 19.86.110(8)-(9). This is fatal to SAF's claims.

Further, SAF do not allege facts establishing "a nexus" between the issuance of the CIDs and SAF's filing of lawsuits. Given the "presumption that a prosecutor has legitimate grounds for the action he takes," *Hartman v. Moore*, 547 U.S. 250, 263 (2006), and the "obvious alternative explanation" for the AGO's investigation, *Iqbal*, 556 U.S. at 682—i.e., the AGO has reason to believe SAF may have violated the CSA and CPA as stated in its CIDs (*see* 2-ER-207-09, 234)—SAF's self-serving and conclusory assertion that they are not aware of "evidence of any legitimate reason for the investigation" fails to state a claim. 2-ER-246; *see Iqbal*, 556 U.S. at 682 (finding "the purposeful, invidious discrimination respondent asks us to infer" was "not a plausible conclusion").

### (3)    Unreasonable search

It is well settled that a CID comports with the Fourth Amendment where: (1) "the inquiry is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also Steele v. Washington ex rel. Gorton*, 537 P.2d 782, 788 (Wash. 1975) (*en banc*). SAF's Complaint does not allege that any CID failed to meet these legal requirements, but instead relies on the baseless assertion that the AGO's investigation is "an aimless fishing excursion, conducted without a clear objective other than

harassment." 2-ER-247. SAF's conclusory allegations fail to state a claim under the Fourth Amendment.

*First*, the AGO's statutory authority to issue the CID is plain. Wash. Rev. Code § 19.86.110(1); Wash. Rev. Code § 24.03A.952. The AGO is not required to allege or prove a violation when issuing a CID under the CPA, and the NpCA simply requires "reasonable suspicion" that its requirements have been violated. Wash. Rev. Code § 19.86.110(1); Wash. Rev. Code § 24.03A.950. These statutes also do not require the AGO to receive a complaint before opening an investigation. *See generally* Wash. Rev. Code 19.86 (AG may "restrain prohibited acts" regardless of receiving a consumer complaint); Wash. Rev. Code § 24.03A.950 (AG may institute an investigation without requiring consumer complaints); *see also Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444-45 (9th Cir. 1994) (discussing broad agency investigatory power). Nor does a "probable cause" standard apply. *See Steele*, 537 P.2d at 788-89.[13]

---

[13] SAF cite the concurrence in *Washington v. Miles*, 156 P.3d 864 (Wash. 2007), in support of their Fourth Amendment claim. 2-ER-246. But *Miles* "involve[d] the interpretation of article I, section 7 of the Washington Constitution," not the Fourth Amendment. *Miles*, 156 P.3d at 866. And it concerned a subpoena for a private individual's banking records, not a CID to a corporation that "can claim no equality with individuals in the enjoyment of a right to privacy." *Morton Salt*, 338 U.S. at 652.

*Second*, SAF do not allege that any CIDs were impermissibly indefinite. In fact, SAF could not allege it because there is "no general or undiscriminating request for all business records" and the types of records sought are "explained with reasonable clarity." *Id.* at 788.

*Third*, the CIDs sought information that was "reasonably relevant to the investigation of unfair and deceptive practices." *Id.* "[T]he agency's appraisal of relevancy . . . 'must be accepted so long as it is not obviously wrong.'" *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (quoting *Resol. Tr. Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994)). SAF do not allege that any records sought were irrelevant to an investigation into their financial and governance affairs. *See* 2-ER-235.

Rather, SAF take the extraordinary position that *any* documents were irrelevant because the AGO's investigation is illegitimate. 2-ER-247. To be sure, "[i]n *extraordinary circumstance*s, a court . . . may inquire into allegations that an agency is using an administrative subpoena for an improper purpose." *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (emphasis added). But a party asking "a court [to] inquire into . . . allegations of bad faith or harassment" must "present . . . *specific evidence* of improper intent." *Garner*, 126 F.3d at 1146 (emphasis

46

added) (cleaned up) (quoting *Frates*, 61 F.3d at 965). And "district courts must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1388 (D.C. Cir. 1980) (*en banc*).

Here, SAF's conclusory assertions of bias and self-serving protestations of innocence do not meet the high bar for "specific evidence of improper intent." SAF's unsupported grievances cannot nullify the AG's undoubted authority to ensure SAF's compliance with Washington law. Many investigation targets doubtlessly feel the same way SAF do. If SAF's grievances were enough to shut down an investigation, the AGO's authority to investigate would be illusory.

*Finally*, consistent with the Fourth Amendment, CIDs may only be enforced by court order. Wash. Rev. Code § 19.86.110(9); *see also Patel v. City of Los Angeles*, 738 F.3d 1058, 1064 (9th Cir. 2013) (noting that the Fourth Amendment requires that "[t]he party subject to the demand must be afforded an opportunity to 'obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply'") (quoting *See v. City of Seattle*, 387 U.S. 541, 545 (1967)). This means a CID cannot force a corporation to provide records absent a judicial determination. *See* Wash. Rev. Code §

19.86.110(9). In addition, as the Washington Supreme Court has explained, if a party believes "the [AG] [has] arbitrarily serve[d] a civil investigative demand upon a business" there is a remedy: "the supplicant is authorized by RCW 19.86.110(7) to petition the appropriate superior court and, upon a showing of good cause, the investigative demand may be set aside." *Steele*, 537 P.2d at 788-89.

Here, SAF failed to avail themselves of the CPA's robust procedural protections, *see id.*; Wash. Rev. Code § 19.86.110(8)-(9), and instead voluntarily complied with the CIDs. Although they later decided to stop cooperating, the AGO has not elected to bring an enforcement action and is not currently seeking any outstanding materials requested in the CIDs. Because SAF have identified no facial shortcomings of the CIDs that they voluntarily responded to and pursued none of the judicial protections available to them under state law, they fail to state a claim for a Fourth Amendment violation.

SAF's § 1983 claims fail in their entirety.

> **b.** **There was no violation of clearly established law**

Even if SAF could link AG Ferguson's or AAG Studor's conduct to a constitutional violation with the required specificity (and they cannot), the individual defendants would still be entitled to qualified immunity because they

did not violate clearly established law. *See Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (To determine whether a right was clearly established, the court is to determine whether the law was "clear enough that *every* reasonable official would know he or she was violating the plaintiff's rights.") (cleaned up). A right is only "clearly established" when, at the time of the act, it was previously set forth by either "controlling authority" or a "robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (citation omitted).

SAF fail to "identify [] caselaw that clearly established that a retaliatory investigation per se violates the First Amendment," which is their burden. *Moore v. Garnand*, 83 F.4th 743, 752-53 (9th Cir. 2023); *see also id.* at 753 ("[W]e were also unable to find any binding precedent that clearly established a First Amendment violation based on a retaliatory investigation."). SAF argue that a retaliatory investigation violates a target's First Amendment rights, citing *White v. Lee*. Opening Br. at 66. But the Ninth Circuit in *Moore* explained that *White* did not hold that "a retaliatory investigation by itself was unconstitutional," but rather that the "*entirety* of the officials' act[ion]"—including direct threats to cease petitioning activity—was unconstitutional. 83 F.4th at 752 (cleaned up); *supra* pp. 19-20. The Court thus concluded that *White* could not have put

defendants on notice that their actions in "unjustifiably pursuing a criminal investigation" would violate the plaintiffs' First Amendment rights. *Id.* Here, as in *Moore*, "[b]ecause Plaintiffs fail to meet their burden of showing that Defendants' investigatory conduct violated clearly established law, Defendants are entitled to qualified immunity." *Id.* at 753.

Furthermore, the AGO has authority to investigate whether charitable entities comply with applicable state requirements and to issue CIDs in aid of that investigation. *See supra* pp. 3-5. The AGO is afforded latitude in "embarking upon investigations without absolute assurances that violations of the [CPA] have occurred." *Steele*, 537 P.2d at 789. There is no "clearly established law" holding that a government agency's service of non-self-executing CIDs that are subject to judicial oversight is itself unlawful viewpoint discrimination, retaliation, or an unreasonable search in violation of the Constitution. To the contrary, such procedures are widely accepted as the most effective and fair manner in which to gather the information necessary, from an adverse party, to investigate and prepare a case. Nor is there "clearly established law" that government agencies are required to preview investigative findings, legal theories, or factual allegations to CID targets before deciding to bring an enforcement action. SAF cannot establish that AG Ferguson and AAG Studor

violated clearly established law. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). Accordingly, this Court should affirm the district court's dismissal on alternative grounds and dismiss the § 1983 personal capacity claims with prejudice.

## C. This Court Should Affirm the Dismissal of SAF's State Law Claims (Counts IV-V)

Turning to SAF's state-law claims, the district court dismissed SAF's abuse-of-process claim as unripe and declined to exercise supplemental jurisdiction over their Public Records Act claim. 1-ER-18-19. Both conclusions were absolutely correct. If the Ninth Circuit chooses to alternatively reach them, however, these claims also fail on the merits.

### 1. SAF's abuse of process claim fails on the merits

SAF's abuse of process claim fails as a matter of law because the tort does not apply to pre-suit investigations. Under Washington law, "[a]buse of process is the misuse or misapplication of the process, *after the initiation of the legal proceeding*, for an end other than that which the process was designed to accomplish." *Vargas Ramirez*, 93 F. Supp. 3d at 1231-32 (emphasis added) (quoting *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008)). "[T]he crucial inquiry is whether *the judicial system's process* . . . has been misused to achieve another, inappropriate end." *Sea-Pac*, 699 P.2d at 220

(emphasis added) (quotation omitted). "The gist of the action is the misuse or misapplication of the process, *after it has once been issued,* for an end other than that which it was designed to accomplish." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004) (emphasis added) (citation omitted). Put another way, "there must be an act a*fter filing suit using legal process empowered by that suit* to accomplish an end not within the purview of the suit." *Sea-Pac*, 699 P.2d at 221 (citation omitted). This limitation is fatal to SAF's claim: a party "cannot bring an abuse of process claim for acts that occurred before the legal proceedings against him were initiated." *Vargas Ramirez*, 93 F. Supp. 3d at 1233; *see also Sea-Pac*, 699 P.2d at 221 (dismissing abuse of process claim based on union's filing with National Labor Relations Board: "[N]o process issued in Washington courts, therefore there is no abuse of process").

Even if a suit had been filed, SAF's claims fail because they have not plausibly alleged "the existence of an ulterior purpose to accomplish an object not within the proper scope of the process." *Vargas Ramirez*, 93 F. Supp. 3d at 1232. While SAF allege that the issuance of CIDs was "motivated by . . . ulterior purpose[s]" and to "chill the activities of SAF . . . or force them out of business,"

2-ER-248, they allege no *facts* to support these conclusions. *See Iqbal*, 556 U.S. at 678.

Finally, even if CIDs were *judicial* process, SAF do not allege facts showing AG Ferguson and/or AAG Studor "misused" that process. *Sea-Pac*, 699 P.2d at 220. Rather, their allegations demonstrate that AAG Studor used CIDs exactly as they were meant to be used: to collect evidence relating to SAF's business activities. The mere fact that SAF disagree with the premise of the AGO's investigation, or characterize a CID deposition as "meandering," 2-ER-237, is insufficient.

### 2.    This Court should affirm the dismissal of SAF's PRA claim

Finally, this Court should affirm the district court's dismissal of SAF's PRA claim on either jurisdictional grounds or the merits. Assuming the Court upholds dismissal of SAF's federal claims, dismissal of SAF's state law claims should follow as a matter of course. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

Dismissal on the merits is appropriate as well because SAF's PRA claim is premature. "[A] requester may only initiate a lawsuit to compel compliance with the PRA after the agency has engaged in some final action denying access

to a record." *Hobbs v. Washington*, 335 P.3d 1004, 1008 (Wash. Ct. App. 2014). A final agency response, therefore, is "a prerequisite for filing an action for judicial review of an agency decision under the PRA." *Id.* at 1009. Because SAF's Complaint alleges that the AGO is continuing to produce records responsive to its request, SAF's PRA claim is premature and this Court should affirm dismissal.

In *Hobbs*, the requester filed a lawsuit alleging PRA violations while their public records request was still open and the agency continued to produce records. The Washington Court of Appeals rejected the plaintiff's position that "a requester is permitted to initiate a lawsuit prior to an agency's denial and closure of a public records request," explaining that "[t]he PRA allows no such thing." *Id.* at 1008. Instead, "based on the plain language of the PRA, . . . before a requester initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records." *Id.* at 1009.

SAF's Complaint not only fails to allege any denial by the AGO—it alleges just the opposite. That is, SAF allege the AGO has and continues to provide responsive records on an installment basis. *See* 2-ER-236-37 (describing multiple productions of responsive records by the AGO, including a production

as recent as September 7, 2023 and acknowledging that "another batch would be arriving later in the month"). SAF's lawsuit is premature and this Court should affirm the district court's dismissal. *See, e.g.*, *West v. Port of Tacoma*, No. 48110-3-II, 199 Wash. App. 1035, 2017 WL 2645665 (Wash. Ct. App. June 20, 2017) (unpublished) (dismissing public records lawsuit as premature when the agency maintained active communication with requester and was continuing to produce multiple installments of records at the time the lawsuit was filed); *Strahm v. Snohomish County*, No. 79254-7-I, 8 Wash. App. 2d 1061, 2019 WL 1989621 (Wash. Ct. App. May 6, 2019) (unpublished) (dismissing lawsuit as prematurely filed when the county had not yet closed the requests at the time the requester filed the lawsuit); *Northup v. Dep't of Corrs.*, No. 72256-5-I, 188 Wash. App. 1039, 2015 WL 4094233 (Wash. Ct. App. July 6, 2015) (unpublished) (holding that lawsuit challenging agency redactions was premature because the request was not closed and the agency continued to produce records).

## D. The District Court Did Not Abuse Its Discretion in "Implicitly" Denying Leave to Amend Because It Dismissed *Without* Prejudice

SAF's argument that the district court abused its discretion by "implicitly" denying leave to amend is a red herring. The district court did not, in fact, deny leave to amend; rather, it dismissed SAF's claims entirely *without* prejudice,

allowing them the opportunity to refile. With this key fact corrected, SAF's entire argument dissolves.

SAF rely on several cases to argue the district court abused its discretion. All are inapposite, however, because *each* involved dismissal *with prejudice*— i.e., dismissals that forbade plaintiffs from re-filing. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal *with prejudice and without leave to amend* is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.") (emphasis added); *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (same, quoting *Eminence Capital*); *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (reversing denial of leave to amend to add new claims following dismissal with prejudice). Here, the district court dismissed SAF's claims *without* prejudice. If SAF's claims become justiciable, nothing in the district court's order prevents SAF from filing a new complaint.

**E.    SAF Are Not Entitled to Costs and Fees Because the AGO's Removal Was Objectively Reasonable**

As noted above, this Court has discretion to address the justiciability bars to SAF's claims in any order it chooses, or in the alternative. *See, e.g.*, *Ruhrgas AG*, 526 U.S. at 585. Thus, even if this Court concludes SAF's claims are

constitutionally unripe, it may still reach prudential ripeness and dismiss on that ground.

Nonetheless, if this Court determines SAF's case is constitutionally unripe, and declines to rule on prudential ripeness, the AGO agrees that remand to state court, not dismissal, is the appropriate remedy. The AGO acknowledged as much in its filings with the district court. 2-ER-184 at n.5; 2-ER-78. But this does not entitle SAF to their costs or fees.

As a threshold matter, whether to award fees for remand is a discretionary determination committed to the district court. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (district court retains discretion to award costs and fees). Accordingly, should this Court agree with the district court that SAF's suit is constitutionally unripe, and decline to rule on prudential ripeness, the appropriate remedy would be to remand to the district court with instructions to remand to state court, and to consider in the first instance whether fees and costs are appropriate under 28 U.S.C. § 1447(c).

But should this Court choose to address costs and fees in the first instance, they are plainly not appropriate here because the AGO's removal was objectively reasonable. 28 U.S.C. § 1447(c) "provides that a remand order 'may' require payment of attorneys' fees—not 'shall' or 'should.'" *Martin*, 546 U.S. at 136.

Accordingly, an "award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales." *Id.* at 139. The governing standard is that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* at 136.

SAF hinge their request for fees entirely on the supposed impropriety of the AGO removing and then arguing that SAF's suit was constitutionally unripe. Opening Br. at 55. But the problem with this argument is that it necessarily implies that SAF's own argument that they have standing is "objectively" *unreasonable*. Because while the AGO doubts that SAF has suffered any constitutional injury, SAF vigorously insist that they have. Opening Br. at 44-51; 2-ER-145-47; *see also* 2-ER-241 (alleging that the AGO's objections to constitutional ripeness are "baseless" and "meritless"); 2-ER-253-54. Thus, when the AGO removed there was a robust, good-faith disagreement which needed to be resolved by the district court. And there is no dispute that if the district court had sided with SAF on this question—or if this Court does—that

the remaining issues in this suit (including prudential ripeness and federal constitutional claims) properly belong in federal court.[14]

Further, in again moving to dismiss post-removal, the Defendants candidly acknowledged the apparent inconsistency in "remov[ing] a case and then argu[ing] that the case is constitutionally unripe." 2-ER-184 n.5. But as the State explained, "[a]bsent . . . a concession" that SAF have "not suffered a constitutional injury" it was appropriate for the district court to "decide whether it does in fact have subject matter jurisdiction, particularly given that SAF has continued to allege that the AGO's objections to constitutional ripeness are 'baseless' and 'meritless.'" *Id*. The State clarified that "[t]o the extent that SAF now concedes that it has not suffered a constitutional injury, then remand pursuant to 28 U.S.C. § 1447(c) is appropriate." *Id.* But without such a concession, "to the extent SAF's claims *are* constitutionally ripe, [the district court was] undoubtedly the appropriate court to address prudential ripeness and/or the merits of Plaintiffs' claims, given this Court's original jurisdiction."

---

[14] On the subject of prudential ripeness, SAF argued below that the AGO's removal constituted "improper 'procedural gamesmanship'" since the AGO supposedly "remove[d] the case from a court where it could have been adjudicated" to one where it cannot. 2-ER-144. But as the State explained, "this case is not ripe in any forum" because "Washington courts apply the same prudential ripeness standard as federal courts." 2-ER-77 (citing *Bahl*, 193 P.3d at 685).

2-ER-185 (citing 28 U.S.C. § 1331); *see also Martin*, 546 U.S. at 140 (noting the importance of the removal statute granting defendants "a right to a federal forum"). The AGO's forthrightness belies SAF's sour-grapes claims of bad faith.[15]

Moreover, even if this case is remanded, the district court's ruling on constitutional ripeness was hardly a vexatious "delay[]" or a "waste[]" of "judicial resources." *Martin*, 546 U.S. at 140. To the contrary, the finding by the district court that SAF cannot allege a First Amendment injury—and any order from this Court affirming it—will undoubtedly shape any future state litigation. The legal principles outlined in these rulings will likely control the course of proceedings below.

Finally, despite the indisputably federal nature of SAF's claims, they try to analogize this case to a Sixth Circuit case called *A Forever Recovery, Inc. v. Township of Pennfield*, 606 F. App'x 279 (6th Cir. 2015), to argue that the AGO's removal was a "frivolous waste of time and resources." Opening Br. at 56-57. But *A Forever Recovery* is factually and legally distinct. *A Forever Recovery* concerned the application of *Williamson* ripeness—as discussed

---

[15] Continuing the theme of candor to the tribunal, the AGO explicitly acknowledged that because it decided to remove, it had waived its *Younger* abstention defense. 2-ER-183 n.4.

above, a since-overruled doctrine specific to Takings claims that required plaintiffs to first seek compensation in state court before seeking relief in federal court. *Supra* pp. 25-26. There, under the then-prevailing *Williamson* rule, the district court held that plaintiffs' claims "were *indisputably unripe*" due to plaintiffs' failure to exhaust its state-court remedies. 606 F. App'x at 281-82 (emphasis added). Here, by contrast, the parties sharply disagree about the ripeness of plaintiffs' claims such that it was entirely appropriate for the AGO to submit this dispute to a federal court for resolution. Further, unlike SAF here, the plaintiff in *A Forever Recovery* did *not* respond to the motion to dismiss by arguing that federal jurisdiction was proper, but instead promptly moved to remand and responded to the motion to dismiss by arguing that the district court lacked jurisdiction to rule on defendants' motion. Resp. to Mot. to Dismiss, *A Forever Recovery, Inc. v. Pennfield Township*, No. 1:13-cv-00782-PLM, 2013 WL 9873171 (W.D. Mich. Aug. 23, 2013), ECF No. 29-1; *see also Martin*, 546 U.S. at 141 (suggesting that a plaintiff's delay in seeking remand could be considered an unusual circumstance such that fees are not warranted); *see also Associates Nat. Bank v. Erum*, 206 F. App'x 666, 668 (9th Cir. 2006) (unpublished) (the fact that plaintiff never moved for remand and declined to take a position on the issue reinforced the court's conclusion that it was not

entitled to costs and fees). Given that SAF previously filed this exact suit in federal court and continue to insist federal jurisdiction is appropriate, removal was appropriate. SAF's request for costs and fees should be rejected.

## VII. CONCLUSION

For the foregoing reasons, Appellees respectfully request this Court affirm the district court's dismissal of Appellants' Complaint or, alternatively, remand to the district court with instructions to remand to Washington state court.

RESPECTFULLY SUBMITTED this 20th day of September 2024.

ROBERT W. FERGUSON
*Attorney General*

*s/Alexia Diorio*
ANDREW R.W. HUGHES, WSBA #49515
ALEXIA DIORIO, WSBA #57280
LAURYN K. FRAAS, WSBA #53238
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Andrew.Hughes@atg.wa.gov
Alexia.Diorio@atg.wa.gov
Lauryn.Fraas@atg.wa.gov
*Attorneys for Defendants-Appellees Robert Ferguson, Joshua Studor, and the Attorney General's Office for the State of Washington*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated       .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                 **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*