No. 24-760

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SECOND AMENDMENT FOUNDATION, ET AL.
*Plaintiffs/Appellants*,

v.

FERGUSON, ET AL.,
*Defendants/Appellees*.

---

On Appeal from the United States District Court
for the Western District of Washington
No. 2:23-cv-01554-MJP
Hon. Marsha J. Pechman, District Judge

---

## APPELLANTS' REPLY BRIEF

---

CORR CRONIN LLP

Steven W. Fogg, WSBA No. 23528
Jack M. Lovejoy, WSBA No. 36962
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com
jlovejoy@corrcronin.com

*Attorneys for Plaintiffs/Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ................................................................................1

ARGUMENT ON REPLY ...................................................................2

I.    The District Court Erred by Dismissing SAF's Claims as
Constitutionally Unripe .........................................................2

    A.    De Novo Review Applies ...........................................2

    B.    SAF Alleged Constitutionally Ripe Claims................................3

        i.    State Defendants pretend CID compliance is
voluntary only when it helps them evade judicial
review..........................................................................3

        ii.    SAF alleged constitutionally ripe injuries .......................8

II.    The District Court Abused its Discretion by Denying Leave to
Amend and Not Remanding to State Court........................................12

    A.    The District Court's Failure to Rule on SAF's Request
for Leave to Amend is Reversible Error ...................................12

    B.    At a Minimum, the District Court Should Have
Remanded the Case and Awarded SAF Attorney Fees ...........13

III.    The District Court Erred in Ruling SAF's Claims are
Prudentially Unripe .............................................................14

    A.    The District Court Lacked Authority to Issue an
Advisory Opinion on the Non-Jurisdictional Issue of
Prudential Ripeness.................................................................14

i

B.    State Defendants Waived Prudential Ripeness by Removing the Case ................................................................17

C.    SAF's Claims are Prudentially Ripe on the Merits .................19

IV.    State Defendants' Merits Arguments are Improperly Before This Court and Procedurally and Substantively Fail ..........................19

A.    The Court Should Decline to Address State Defendants' Merits Arguments ....................................................................19

B.    Each of State Defendants' Merit Arguments Fails ..................21

i.    Absolute immunity does not apply ................................21

ii.    State Defendants are not entitled to qualified immunity. ........................................................................23

a.  The Complaint pleads a constitutional violation .......23

i)  Viewpoint discrimination ...............................23

ii) First Amendment retaliation ..........................24

iii) Unreasonable search .......................................26

b.  The Complaint sufficiently alleges that State Defendants' conduct violates clearly established law ...........................................................27

C.    SAF alleged valid state law claims ..........................................29

i.    SAF sufficiently pleaded a claim for abuse of process .........................................................................29

ii.    SAF's claims under the Washington Public Records Act are not premature .......................................30

CONCLUSION ..................................................................................32

ii

# TABLE OF AUTHORITIES

## CASES

*Arizona Students' Ass'n v. Arizona Bd. of Regents,* 824 F.3d 858 (9th Cir. 2016) .25

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................26

*Baccei v. U.S.*, 732 F.3d 1140, 1149 (9th Cir. 2011)) ............................................19

*Bell v. Hood*, 327 U.S. 678, 682 (1946)...................................................................20

*Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1151 (9th Cir. 2017) ................3

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ..............12

*Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)...........................................25

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993)............................................22

*Burns v. Reed*, 500 U.S., 486-87 (1991) ..................................................................21

*Cantu v. Yakima Sch. Dist. No. 7*, 514 P.3d 661, 678 (Wash. App. 2022)..............31

*Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009) .........16

*Ellis v. Dyson*, 421 U.S. 426, 433-434 (1975) .........................................................16

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ......13

*Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) .......................................23

*Grand Council of the Crees (of Quebec) v. F.E.R.C.*, 198 F.3d 950, 954 (D.C. Cir. 2000)...........................................................................................................16

*Hampton v. Pac. Inves. Mgm't Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) .........20

*Hough v. Stockbridge*, 216 P.3d 1077 (Wash. Ct. App. 2009)................................29

*Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)......................................................22

*In re Coleman*, 560 F.3d 1000, 1008 n.18 (9th Cir. 2009) .............................. 16, 17

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)....9

iii

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) ...........................................................................................16

*Juan DOE I v. Mahony*, No. CV1002902JSTJEMX, 2011 WL 13127889, at *4 (C.D. Cal. Feb. 25, 2011) ........................................................... 20, 21

*Kisela v. Hughes*, 584 U.S. 100, 105 (2018) ...........................................................27

*Knick v. Township of Scott, Pa.*, 588 U.S. 180, 184-89 (2019) ...............................18

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ......................................................16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010) .................................................................8

*Media Matters for Am. v. Paxton*, No. 24-CV-147, 2024 WL 1773197, at *16 (D.D.C. Apr. 12, 2024) ..............................................................................9

*Moor v. County of Alameda*, 411 U.S. 693, 715-16 (1973)....................................16

*Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) ...................................21

*Palmer Kearny Mesa Properties, LP v. City of San Diego*, No. 23-CV-1755-DMS-BJC, 2024 WL 3907049, at *4 n.4 (S.D. Cal. Aug. 22, 2024)............................18

*Progressive Animal Welfare Soc. v. Univ. of Washington*, 884 P.2d 592, 607 (Wash. 1994) .........................................................................................31

*Race v. Bd. of Cnty. Commissioners of the Cnty. of Lake*, No. 15-CV-1761-WJM-KLM, 2016 WL 1182791, at *2 (D. Colo. Mar. 28, 2016)..................................18

*Retail Prop. Tr. v. United Broth. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (2014)..................................................................................................24

*Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) ..........................15

*Roley v. Google LLC*, 40 F.4th 903, 910-11 (9th Cir. 2022) ...................................19

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ...............................15

*Russell v. Rolfs*, 893 F.2d 1033, 1038 (9th Cir. 1990)..............................................7

*Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) ...................................9

*Shukla v. Sharma*, 07-CV-2972 CBA CLP, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) ....................................................................................................................29

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).. 15, 17

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989)...............10

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 100-01 n.3 (1998).. 15, 17

*Stein v. Disciplinary Bd. Of Supreme Court of NM*, 520 F.3d 1183, 1193 (10th Cir. 2008) ....................................................................................................................22

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) .........................................10

*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ..............................................9

*Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1207 (9th Cir. 2022) ....................................................................................................................12

*United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ..................................27

*United States v. Parker*, 30 F.3d 542, 552 (4th Cir. 1994)......................................7

*United States v. Powell*, 379 U.S. 48, 58 (1964) ....................................................29

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ..............................................................7

*Washington v. Brelvis Consulting LLC*, 436 P.3d 818, 828 (Wash. Ct. App. 2019) 6

*Weday v. Mayorkas*, No. 2:21-cv-01595-RSM-JRC, 2022 WL 1143227, at *4 (W.D. Wash. Mar. 22, 2022)....................................................................................27

*White v. Lee*, 227 F.3d. 1214 (9th Cir. 2000) .................................................. 25, 28

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) ................................................................................................ 17, 18

v

**STATUTES**

RCW 19.86.110(8)................................................................5

RCW 19.86.110(9)................................................................4

RCW 42.56.080(6)..............................................................30

**OTHER AUTHORITIES**

28 U.S.C. § 1447(d) ...........................................................3

**RULES**

CR 37(a)(4) .......................................................................4

Rule 12(b)(1)....................................................................20

Rule 12(b)(6)........................................................ 20, 21, 24, 27

# INTRODUCTION

State Defendants' litigation strategy mirrors their out-of-court abuses. Just as they proffered a succession of pretextual justifications for their "investigation," State Defendants now raise one spurious legal theory for avoiding accountability after another without regard for whether the argument is properly before the Court. All but conceding the indefensibility of the district court's jurisdictional dismissal, State Defendants dedicate nearly half their arguments to issues the district court never addressed.

State Defendants offer no reason this Court can or should alter the district court's jurisdictional dismissal into a ruling on the merits and resolve substantive matters in the first instance—likely because State Defendants do not care whether the Court even reaches these arguments. As with their baseless Civil Investigative Demands ("CIDs"), State Defendants know that, regardless of whether these contentions ever bear fruit, Alan Gottlieb and Second Amendment Foundation (collectively, "SAF") must divert time, money, and other resources from SAF's constitutionally-protected political activities to respond to them. Just as with their sham investigation, that drain of resources is State Defendants' primary goal.

The bad faith nature of State Defendants' strategy is amply demonstrated by their willingness to flatly contradict their prior (and current) official legal positions

whenever it might allow them to avoid judicial review. State Defendants are Washington's chief law enforcement officers. They have a duty of candor to the Court—as well as sovereign responsibility to interpret and apply Washington law fairly and consistently regardless of whether it benefits them in the moment. Instead, they are perversely using the very justice system created to safeguard citizens' fundamental rights to violate those rights, harassing their political enemies for the crime of disagreeing with them. The Court should not endorse these abuses of power. Reversal is warranted.

## ARGUMENT ON REPLY

### I. The District Court Erred by Dismissing SAF's Claims as Constitutionally Unripe

This Court should reverse the district court's order dismissing SAF's claims as constitutionally unripe.

#### A. De Novo Review Applies

State Defendants acknowledge the district court's error in dismissing SAF's claims after finding it lacked subject matter jurisdiction, conceding that remand is the only available remedy for such defects after removal. Answering Br. 12. Yet State Defendants assert that, because the district court *should* have remanded the case if it lacked jurisdiction, this Court may review the lower court's ruling under

the highly deferential standard that would have been applicable if it *had* remanded the case for a lack of jurisdiction. *Id.* at 12-13.

State Defendants are incorrect. "An order *remanding* a case to the State court from which it was removed is not reviewable on appeal." 28 U.S.C. § 1447(d) (emphasis added). Here, the district court did not issue "an order remanding [the] case" to state court. It entered an order *dismissing* the case, and it is well established that this Court reviews "de novo a district court's order *dismissing* a case for lack of subject matter jurisdiction [or] lack of ripeness." *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1151 (9th Cir. 2017) (emphasis added).

This Court is reviewing the order the district court actually issued, not the hypothetical ruling State Defendants wish the court below had made. De novo review applies.

### B. SAF Alleged Constitutionally Ripe Claims

#### i. State Defendants pretend CID compliance is voluntary only when it helps them evade judicial review

State Defendants argue at length that SAF has not suffered any injury from the unconstitutionally retaliatory CIDs because the CIDs are "non-self-executing." Answering Br. 16-22. State Defendants insist the CIDs "carry no stick" because a recipient faces no penalties for refusing to comply unless the recipient remains uncooperative after State Defendants obtain a court order enforcing the CIDs, and a

court has not yet enforced these CIDs. State Defendants contend that any resources SAF have spent, or private information they have disclosed, in response to the CIDs were "voluntary" and "self-inflicted harms" because SAF could have simply ignored the CIDs instead. *Id.* at 2, 22. This is false.

A recipient may not ignore a CID without penalty. The statute allowing State Defendants to petition a court for enforcement "[w]henever any person fails to comply with any civil investigative demand" expressly empowers the court to "impose such sanctions as are provided for in the civil rules for superior court with respect to discovery motions" when issuing an enforcement order. RCW 19.86.110(9). Just as in federal court, Washington's civil rules generally *require* the court to sanction a party who ignores a discovery request. *See* CR 37(a)(4). A party who simply ignores a CID is thus subject to *immediate* penalties when State Defendants move to enforce; there is no requirement that the party must first violate a final court order enforcing the CID.

Even if State Defendants were correct that SAF's cooperation was initially optional, compliance quickly became mandatory as soon as the brief period in which they could challenge the CIDs had elapsed. State Defendants acknowledge that a CID recipient may petition a court to modify or set aside the CID only "before the return date specified in the demand, or within twenty days after the demand has been

served, whichever period is shorter."[1] RCW 19.86.110(8). But State Defendants claim SAF "mischaracterize the CID process when they argue that they 'will face an attorney fee award and other penalties for refusing to comply because they cannot raise any objections to the CID outside of the twenty-day window." Answering Br. 21 (quoting Opening Br. 48). State Defendants assert that "recipients *may* raise constitutional objections to a CID" even after RCW 19.86.110(8)'s deadline has passed if and when State Defendants petition a court for enforcement.[2] *Id.*

State Defendants' protests are difficult to swallow given that SAF acquired their interpretation of the "CID process" from a reliable source: State Defendants. For many years now, State Defendants themselves have maintained that if a CID recipient does "not bring a motion to set aside the CID" during the RCW 19.86.110(8) period "and instead, cho[o]se[s] to ignore the CID in its entirety," the

---

[1] State Defendants do not dispute that SAF could not have effectively raised their challenges to the CID during this period. CIDs are presumptively valid under state law, and State Defendants did not reveal their unconstitutional motives until after the RCW 19.86.110(8) window closed. SAF could not have reasonably known the basis for their claims before that deadline. Opening Br. 1-5, 14-22.

[2] State Defendants incorrectly claim that SAF agreed with this view of state law, Answering Br. 21, citing a page of the district court's order stating: "Plaintiffs here can raise their First Amendment challenges if the Attorney General moves to enforce the CIDs—a point *Defendants* concedes [sic] in their reply." 1-ER-11 (emphasis added). State Defendants are the "Defendants" here; the district court referenced *their* supposed concession—not SAF's.

recipient is "not [] afforded an additional opportunity to bring its objections before a court." 1-ER-67. Citing precedent from other jurisdictions, State Defendants' official position has been that even constitutional objections to a CID are "waived" once RCW 19.86.110(8)'s window has closed. 1-ER-65–67. The only Washington court to have ruled on the matter agreed with State Defendants, adopting their explicit argument that a recipient's constitutional objections to a CID were waived because he failed to comply with the RCW 19.86.110(8) challenge deadline. *Washington v. Brelvis Consulting LLC*, 436 P.3d 818, 828 (Wash. Ct. App. 2019).[3]

It would be one thing if State Defendants had experienced a genuine change of heart, realizing their prior stance was inequitable or contrary to legislative intent. But that is not the case. On September 15, 2023—four months after State Defendants first filed a motion in this case that claimed "in the event the AGO moves to enforce compliance with a CID, SAF would have another opportunity to raise their arguments," 1-ER-265—State Defendants were *still* privately telling CID recipients the opposite, insisting recipients had waived all right to contest their CIDs in court following the close of the RCW 19.86.110(8) window while threatening penalties for noncompliance. 1-ER-25.

---

[3] The Washington Court of Appeals declined to reach the trial court's ruling that challenges to the CID were waived because it held the challenge at issue failed on the merits. *Brelvis*, 436 P.3d at 829.

State Defendants do not even deny this self-serving pivot. Their sole response is a footnote declaring it "irrelevant" that they have alternated back and forth between irreconcilable interpretations of state law, advancing whichever reading of the statute is most likely to allow them to avoid judicial review in any given moment.[4] Answering Br. 21 n.7. But this Court has applied judicial estoppel in analogous circumstances, rebuking state officials who asserted in federal court that a litigant had an available state court vehicle for raising his claims while arguing in the corresponding state proceeding that those same claims were procedurally defaulted. *See Russell v. Rolfs*, 893 F.2d 1033, 1038 (9th Cir. 1990) ("[I]n the state's view, there was no remedy available to the defendant. The state should have told the district court that such was the state's view—not that the defendant did have an adequate and available remedy in the state courts." (emphases omitted)).

"The Government's argument is too cute by half (or perhaps two-thirds)." *United States v. Parker*, 30 F.3d 542, 552 (4th Cir. 1994). State Defendants are violating their responsibility to this Court and Washington citizens by contradicting

---

[4] State Defendants ipse dixit pronouncement that SAF never "relied on or were prejudiced by" State Defendants' inconsistent legal stances (Answering Br. 21) is inappropriate at the motion to dismiss stage when all inferences must be taken in SAF's favor. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). SAF would not have cooperated with State Defendants as long as they did had SAF known State Defendants would abandon their long-held position regarding the penalties for noncompliance in this case.

themselves and failing to disclose their actual view of the law. The Court should not indulge these tactics. It should reject any argument that SAF acted voluntarily when responding to the CIDs.

### ii. SAF alleged constitutionally ripe injuries

Each of State Defendants' contentions about SAF's injuries necessarily fails because the premise underlying most of State Defendants' arguments regarding ripeness is false: SAF were *not* free to ignore the CIDs and their compliance was *not* voluntary, as they would have been subject to immediate legal penalties had they refused.

The CIDs caused SAF financial and operational injuries because they were *legally required* to expend significant hours and money responding to them to avoid legal penalties. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010). This *forced* diversion of resources necessarily left less funds and time available for the constitutionally-protected activities of SAF and the other plaintiff organizations dedicated to protected political advocacy, resulting in an actual chill in their protected expression.[5] *See Media*

---

[5] State Defendants argue the facts, claiming SAF's advocacy has *increased* since the sham investigation began. Answering Br. 18-19. Factual naysaying is inappropriate on a motion to dismiss, *see Inst. of Cetacean Research v. Sea Shepherd*

*Matters for Am. v. Paxton*, No. 24-CV-147, 2024 WL 1773197, at \*16 (D.D.C. Apr. 12, 2024). And SAF suffered injuries to their privacy and seclusion because, again, they were *forced* to produce private information to the government and subject themselves to strenuous interrogation in multiple lengthy depositions to avoid fines and other penalties. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (consumers had standing because they "adequately alleged privacy harms").

State Defendants' reliance on *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) and *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) is thus unavailing. Both cases turned on the fact that the enforcement of the CIDs was not a foregone conclusion, the recipients would not suffer penalties for noncompliance, and the recipients could raise their objections if and when the government moved to enforce the CID. Here, State Defendants' own long-standing view of the law is that

---

*Conservation Soc'y*, 153 F. Supp. 3d 1291, 1315 (W.D. Wash. 2015), and State Defendants are wrong. SAF have engaged in less advocacy than they *otherwise would have* had they not been forced to expend over $100,000 and hundreds of hours responding to a bogus investigation.

State Defendants also bizarrely claim that SAF's invocation of the long-recognized principle that an advocacy organization can establish standing through a diversion of resources means "any groups engaging in First Amendment activity would be immune from state law enforcement." Answering Br. 35. Obviously, there is a difference between standing to *challenge* law enforcement actions as unconstitutional and *immunity* from valid law enforcement activity.

none of those three conditions apply—the CIDs are summarily enforceable, SAF will be subject to penalties for noncompliance, and SAF's objections to their CIDs are procedurally defaulted and cannot be raised in an enforcement proceeding.

Moreover, SAF have alleged numerous other types of injuries that were not at issue in *Twitter* or *Seattle Pacific University*. Unlike those cases, here State Defendants also served CIDs on third parties that falsely indicated they had reason to suspect SAF of unlawful activity, including defrauding the donors on whose trust SAF depend. 1-ER-233-35; 1-ER-244. These defamatory CIDs damaged SAF's reputations with their business partners and even disrupted operations when they led one vendor to abruptly cut contact in the middle of an ongoing project. 1-ER-232. And State Defendants' harassment subjected Mr. Gottlieb to stress and other emotional distress, placing considerable strain on his personal health. 1-ER-244.

Each of these are fully cognizable injuries that independently confer standing on SAF. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) (finding standing where defendant falsely informed third parties that plaintiffs were suspected of various criminal activities); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989) (emotional distress injuries conferred standing for First Amendment claim). Significantly, these harms would have occurred even if, as State Defendants falsely claim, SAF voluntarily complied with their CIDs.

State Defendants' only response is to perfunctorily label SAF's reputational injuries as "speculative."[6] Answering Br. 23. They claim that, "two years later, SAF conjectured only that vendors '*may* cease to do business with plaintiffs,'" *id.*, ignoring that the Complaint clearly alleges a vendor *did* temporarily cease doing business with SAF as a result of receiving a defamatory CID. 1-ER-232–33. State Defendants also fault SAF for making the information public by commencing this lawsuit because the third-party CIDs included gag orders purportedly "to help protect public disclosure [sic] of the CIDs" and guard SAF's reputation. Answering Br. 23.

State Defendants' arguments are contrary to the allegations in the Complaint (*see* 1-ER-234; n.5, *supra*), and again miss the point. Irrespective of whether the third-party CID recipients further disseminated the false statements in the defamatory CIDs, those CIDs damaged SAF's reputation *with the third parties who received them*. That reputational damage is sufficient *in and of itself* to confer standing: the injury occurred immediately when the falsehood was communicated to the third parties, and there is no separate requirement that the third parties take adverse action toward SAF in response to the false information. *See TransUnion*,

---

[6] State Defendants provide no substantive response regarding the emotional distress and resulting strain on Mr. Gottlieb's health resulting from their challenged actions. *See* Answering Br. 23.

594 U.S. at 414 (injury occurs when a defamatory statement is published to a third party.).

State Defendants offer no valid defense of the district court's erroneous ruling that SAF's claims were constitutionally unripe. Reversal is required.

## II.     The District Court Abused its Discretion by Denying Leave to Amend and Not Remanding to State Court

If the allegations of constitutional injury *were* deficient, the district court should have allowed SAF leave to amend its Complaint. At a minimum, the district court should have remanded the case to state court.

### A. The District Court's Failure to Rule on SAF's Request for Leave to Amend is Reversible Error

The district court's failure to grant SAF's request to amend their Complaint is not a "red herring." Answering Br. 55. State Defendants conflate the "two separate concepts" of a denial of leave to amend and dismissal with prejudice in arguing that the district court did not deny SAF's request for leave to amend. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Even though the district court dismissed the Complaint without prejudice, the district court's failure to rule on SAF's request for leave to amend constituted an implicit denial. *See Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1207 (9th Cir. 2022) (order stating that "the court dismisses plaintiffs' claim without prejudice" was intended to end the case); *id.* at 1212 (agreeing with majority that,

"[a]lthough it is possible the district court intended the dismissal without prejudice to grant leave to amend," "the best interpretation of the district court's order is that it implicitly denied leave to amend.") (concurring, Smith, J.).

Reversal is thus warranted where, as here, the district court denies leave to amend without any explanation. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); Opening Br. 43-44. If the Court agrees that the district court lacked jurisdiction, the Court should reverse the order dismissing the Complaint and direct the district court to grant SAF leave to amend.

## B. At a Minimum, the District Court Should Have Remanded the Case and Awarded SAF Attorney Fees

State Defendants concede that "remand to state court, not dismissal, is the appropriate remedy" "if this Court determines SAF's case is constitutionally unripe, and declines to rule on prudential ripeness," Answering Br. 57; *see also* 1-ER-183 n.5; 1-ER-77; Opening Br. 46-49. As discussed below, the district court's ruling on prudential ripeness *after* concluding it lacked jurisdiction constituted an improper advisory opinion. *See also* Opening Br. 49-55. If this Court agrees that the district court lacks jurisdiction, and SAF could not establish standing through amendment of their Complaint, the Court should direct the district court to remand the case to state court.

If the district court lacked jurisdiction, the Court should also award SAF their attorney fees incurred from State Defendants' objectively unreasonable removal. *See* Opening Br. 47-49. Again, State Defendants have engaged in a myriad of procedural gamesmanship to avoid judicial review. State Defendants' only justification for these frivolous and wasteful procedural shenanigans is that they are entitled to an improper federal advisory opinion on jurisdiction because there is (supposedly) "a robust, good-faith disagreement" on whether jurisdiction is present. *See* Answering Br. 58; 1-ER-77.

State Defendants have long maintained that federal court does not have jurisdiction of SAF's claims; their removal to federal court was thus objectively unreasonable. SAF is entitled to their attorney fees.

## III. The District Court Erred in Ruling SAF's Claims are Prudentially Unripe

The Court need not reach the district court's alternative ruling on prudential ripeness, because that ruling was an unauthorized advisory opinion and, regardless, State Defendants waived that argument. If the Court does analyze prudential ripeness, it should reverse the district court's ruling.

### A. The District Court Lacked Authority to Issue an Advisory Opinion on the Non-Jurisdictional Issue of Prudential Ripeness

Where, as here, a court concludes that it lacks jurisdiction, the court has no authority to issue an alternative ruling based on non-jurisdictional grounds. *See*

*Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013); Opening Br. 50-51. The cases upon which State Defendants rely to argue that the district court has "leeway" "to choose among threshold grounds for denying audience to a case on the merits" do not hold otherwise. *See* Answering Br. 24-25 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

Rather, those cases merely clarify that district courts may consider *jurisdictional* questions in any order: "While *Steel Co.* confirmed that jurisdictional questions ordinarily must precede merits determinations in dispositional order, *Ruhrgas* held that there is no mandatory 'sequencing of *jurisdictional* issues.'" *Sinochem*, 549 U.S. at 430-31 (2007) (emphasis added) (discussing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 100-01 n.3 (1998) and quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). In other words, "a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." *Sinochem*, 549 U.S. at 431 (discussing *Ruhrgas*, 526 U.S. at 578).

It is (or should be) beyond dispute that prudential ripeness is *not* a jurisdictional question. This Court has explained: "[T]he question is jurisdictional only if it speaks to *constitutional* ripeness rather than *prudential* ripeness—if a matter is constitutionally ripe, the court may decline to consider it for prudential

reasons, *but it does not lack jurisdiction to consider the case*." *In re Coleman*, 560 F.3d 1000, 1008 n.18 (9th Cir. 2009) (emphasis added). *See also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) ("doctrine of prudential ripeness 'constitutes an important exception to the usual rule that *where jurisdiction exists* a federal court must exercise it'") (emphasis added) (quoted source omitted).

*Ellis v. Dyson*, 421 U.S. 426, 433-434 (1975); *Moor v. County of Alameda*, 411 U.S. 693, 715-16 (1973); *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Grand Council of the Crees (of Quebec) v. F.E.R.C.*, 198 F.3d 950, 954 (D.C. Cir. 2000) are therefore all inapposite. As State Defendants recognize, those courts "assume[d], without deciding, that Article III subject matter jurisdiction *is met*" before addressing "an alternative justiciability argument." Answering Br. 25 (emphasis added). Similarly, in *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009) (Answering Br. 25), the district court's order dismissing claims for lack of standing and ripeness did not distinguish between constitutional or prudential ripeness. This Court, however, did. The Court first concluded that constitutional ripeness *did* exist under Article III, before holding that the case was not prudentially ripe.

Unlike those cases, the district court here concluded that Article III subject matter jurisdiction was *not* met. Once the district court held that constitutional jurisdiction did *not* exist, it lacked any authority to issue an "alternative" ruling on prudential ripeness. *See Sinochem*, 549 U.S. at 431 ("Without jurisdiction the court cannot proceed *at all* in any cause") (emphasis added) (quoting *Steel Co.*, 523 U.S. at 94); *In re Coleman*, 560 F.3d at 1005 (constitutional ripeness "is a limitation on the power of the judiciary" and "prevents courts from declaring the meaning of the law in a vacuum"). *See also* Opening Br. 50-51.

The district court's ruling on prudential ripeness was an improper advisory opinion, and the Court should not consider it here.

### B. State Defendants Waived Prudential Ripeness by Removing the Case

If the Court does reach the district court's ruling on prudential ripeness, it should reverse the district court's finding that State Defendants had not waived the issue by removing the case to federal court. State Defendants (and the district court) misunderstand that SAF's waiver argument. It is *not* based on the overruled portion of *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), which required a plaintiff to "attempt to seek compensation through the procedures the State has provided if the State provides an adequate procedure for seeking just compensation (state-litigation requirement)" for an as-

applied takings claim to be ripe. *Palmer Kearny Mesa Properties, LP v. City of San Diego*, No. 23-CV-1755-DMS-BJC, 2024 WL 3907049, at *4 n.4 (S.D. Cal. Aug. 22, 2024) (citations omitted). Instead, SAF relies on *Knick v. Township of Scott, Pa.*, 588 U.S. 180, 184-89 (2019), which rejected the "preclusion trap" arising from *Williamson*'s state-litigation requirement and held that prudential ripeness only requires that the government has reached a final decision on the application of the regulations to the property at issue.

The underlying purpose of *Knick*'s holding is to prohibit government defendants from employing procedural gamesmanship to evade judicial review. Removing a state court action to federal court based on federal jurisdiction only to then argue that the federal court lacks jurisdiction is just the sort of procedural gamesmanship that waives the issue of prudential ripeness. *See e.g. Race v. Bd. of Cnty. Commissioners of the Cnty. of Lake*, No. 15-CV-1761-WJM-KLM, 2016 WL 1182791, at *2 (D. Colo. Mar. 28, 2016)(removing a case to federal court because it includes a §1983 claim only to move to dismiss the §1983 claim for lack of prudential ripeness and remand the state claims is an "unusual maneuver" that "adds nothing to the dispute but delay" and waives the issue of prudential ripeness).

The Court should hold that State Defendants have waived their right to argue prudential ripeness given their "unusual maneuver[ing]"—to put it mildly—to avoid judicial review.

### C. SAF's Claims are Prudentially Ripe on the Merits

As set forth in their Opening Brief and Opposition to Defendants' Motion to Dismiss, SAF's claims are prudentially ripe on the merits. Thus, even if the district court could issue an alternative advisory opinion on prudential ripeness, the lower court erred in holding that SAF's claims are not prudentially ripe. *See* Opening Br. 55-58; 1-ER-146–47.

### IV. State Defendants' Merits Arguments are Improperly Before This Court and Procedurally and Substantively Fail

#### A. The Court Should Decline to Address State Defendants' Merits Arguments

This Court has reiterated that it "will not reframe an appeal to review what would be in effect a different case than the one decided by the district court." *Roley v. Google LLC*, 40 F.4th 903, 910-11 (9th Cir. 2022) (quoting *Baccei v. U.S.*, 732 F.3d 1140, 1149 (9th Cir. 2011)). Consistent with this precedent, the Court should decline State Defendants' invitation to review arguments the district court never ruled upon and transform the order dismissing the case for lack of jurisdiction

*without* prejudice under Rule 12(b)(1) to an order dismissing SAF's claims on the merits *with* prejudice under Rule 12(b)(6).[7] *See* Answering Br. 33-55.

"[T]here exists a clear distinction between the question presented on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the question presented on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." *Juan DOE I v. Mahony*, No. CV1002902JSTJEMX, 2011 WL 13127889, at *4 (C.D. Cal. Feb. 25, 2011). "[T]he former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." *Id.* (quoted source omitted). "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided *after* and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946) (emphasis added).

By claiming that this Court can affirm an order on any grounds supported by the record, *see* Answering Br. 33, State Defendants conveniently ignore that *the*

---

[7] Dismissals under Rule 12(b)(6) "are judgments on the merits" and "will preclude future assertion of claims 'arising out of the same transactional nucleus of facts.'" *Hampton v. Pac. Inves. Mgm't Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) (cleaned up). "Dismissals for lack of subject-matter jurisdiction, on the other hand, must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case." *Id.*

*district court never issued an order granting a motion to dismiss under Rule 12(b)(6)*. There is, therefore, no Rule 12(b)(6) order for this Court to affirm "on any ground finding support in the record." *Id*. Moreover, the failure to state a claim under Rule 12(b)(6) is not the proper basis for a jurisdiction dismissal—or the affirmance thereof. *See Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) ("The core holding in *Bell* was 'that the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal.'") (quoted source omitted); *Mahony*, 2011 WL 13127889, at *6 (noting that defendants' arguments on the merits of the claims "are misplaced in a Rule 12(b)(1) motion").

The Court should decline to consider any of State Defendants' merit arguments.

### B. Each of State Defendants' Merit Arguments Fails

Even if the Court is inclined to consider State Defendants' merit arguments, each argument nevertheless fails.[8]

#### i. Absolute immunity does not apply

State Defendants are not entitled to absolute immunity. *See* 1-ER-148–50. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials." *Burns v. Reed*, 500 U.S., 486-87 (1991). Importantly,

---

[8] SAF incorporate by reference herein the arguments in their Opposition to Defendants' Motion to Dismiss in the district court. *See* 1-ER-137–76.

absolute immunity attaches to *advocacy*, not investigation. *See* 1-ER-148–40; *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Advocacy includes "evaluating evidence and interviewing witnesses" in preparation for trial, while investigation includes "searching for the clues and corroboration that might give [] probable cause to recommend that a suspect be arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993).

State Defendants are not entitled to absolute immunity because they have been performing their investigative function as part of their "corresponding investigation related to the CID." Answering Br. 36. State Defendants started and pursued an investigation to divert SAF's time and money from disfavored political speech, to intimidate SAF, and to fish for any useful fact that might turn up. These actions go far beyond the mere "issuing of a CID or subpoena duces tecum," Answering Br. 36, and are most akin to those of the detective or prosecutor engaging in investigative work before there is probable cause to make an arrest.[9] *See* 1-ER-148–50.

---

[9] The cases State Defendants cite extended absolute immunity only to government attorneys engaged in *judicial processes*. None of them provided immunity to a prosecutor "conducting investigative work themselves in order to decide whether" legal proceedings should move forward. *Buckley*, 509 U.S. at 275. Moreover, "Supreme Court precedent [] grants only qualified immunity to the investigative activities of prosecutors." *Stein v. Disciplinary Bd. Of Supreme Court of NM*, 520 F.3d 1183, 1193 (10th Cir. 2008).

State Defendants are not entitled to absolute immunity because they someday may bring a lawsuit that they do not currently have a basis to bring. If an eventual lawsuit cannot retroactively imbue an investigation with absolute immunity, then the mere possibility of such a lawsuit certainly cannot.

### ii. State Defendants are not entitled to qualified immunity.

SAF have sufficiently pleaded facts that would allow individual-capacity damages claims to proceed in the face of qualified immunity. 1-ER-150–58.

### a. The Complaint pleads a constitutional violation

The Complaint alleges three constitutional violations: (1) viewpoint discrimination, (2) First Amendment retaliation, and (3) unreasonable search.

### i) Viewpoint discrimination

Viewpoint discrimination "occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject." *Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001). State Defendants falsely claim that SAF's viewpoint discrimination claim "rests solely" on the fact that State Defendants have not subjected pro-gun control groups to sham investigations and that those groups are not similarly situated because SAF do "not allege any of these 'anti-gun group[s]' engaged in conduct warranting an investigation by the AGO." Answering Br. 39-40.

The Complaint *does* allege that State Defendants subjected SAF to disparate treatment as compared to similarly situated advocacy groups on the other side of the gun debate. 1-ER-242. The Complaint further alleges that State Defendants have no basis for suspecting SAF of unlawful conduct, with the only reasonable inference being that State Defendants are motivated by political malice. 1-ER-225–27; 1-ER-229-32; 1-ER-234-39; 1-ER-242. Ignoring these allegations, State Defendants instead ask the Court to look beyond the face of the Complaint and take judicial notice of "public filings" that were "suspicious" and "warranting an audit" to argue that SAF's allegations of viewpoint discrimination are insufficient. Answering Br. 40-41. But courts do not weigh competing factual allegations on a Rule 12(b)(6) motion. Rather, the courts "*must* accept *as true* all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Broth. of Carpenters & Joiners of Am..*, 768 F.3d 938, 945 (2014) (emphasis added). SAF, not State Defendants, are the nonmoving party on State Defendants' 12(b)(6) motion. The Complaint's factual allegations, and the reasonable inferences therefrom, sufficiently allege viewpoint discrimination.

### ii) First Amendment retaliation

To sufficiently plead First Amendment retaliation, a plaintiff must allege that "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the

protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Arizona Students' Ass'n v. Arizona Bd. of Regents,* 824 F.3d 858 (9th Cir. 2016) (citations omitted). The Complaint adequately pleads each element. *See* 1-ER-154–55.

State Defendants attempt to insert a phantom fourth requirement that SAF must have actually been chilled from filing lawsuits. *See* Answering Br. 43. But courts have reaffirmed time and again that a "plaintiff is not required to demonstrate that its speech was *actually* suppressed or inhibited." *Ariz. Students' Ass'n*, 824 F.3d at 867 (emphasis added). A plaintiff must only show "that the adverse action at issue *would* chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (emphasis added; citations omitted). This Court has already held that being subjected to a retaliatory investigation just like State Defendants' here would chill a person of ordinary firmness. *See White*, 227 F.3d at 1229.

Moreover, SAF's constitutionally protected activities that motivated State Defendants' retaliation in the first place are not limited to lawsuits. *See* 1-ER-154–55. These activities positioned SAF as State Defendants' political enemies, leading State Defendants to target SAF for a retaliatory investigation. And, as discussed

above, State Defendants' retaliation *has* chilled protected expression by diverting SAF's resources to responding to the investigation and away from political advocacy.

Finally, State Defendants' contention that SAF failed to allege "a nexus" between its investigation and their constitutionally protected conduct, Answering Br. 44, is a recapitulation of their denials regarding their motives. State Defendants fail to engage with the numerous facts SAF allege that support the inference of a malicious motive, including State Defendants' repeated offering of pretextual explanations that were easily proven false. *See* 1-ER-151–52; 1-ER-155. State Defendants having "reason to believe SAF may have violated the CSA and CPA" is therefore not an "obvious alternative explanation" for the facts that the Court must accept as true in this posture, Answering Br. 44 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)), as it does not explain State Defendants continuously changing their story. The Complaint states a claim for unconstitutional retaliation.

### iii)    **Unreasonable search**

Finally, the Complaint sufficiently alleges a Fourth Amendment constitutional violation for unreasonable search. As State Defendants acknowledge, a CID comports with the Fourth Amendment *only* if (1) "the inquiry is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652

(1950). *See* Answering Br. 44. The Complaint sufficiently alleges that *none* of these three constitutional requirements existed here. *See* 1-ER-151–52; 1-ER-155–56.

State Defendants again ignore these factual allegations *and* the Rule 12(b)(6) standard to argue that the Complaint contains "conclusory assertions of bias and self-serving protestations of innocence [that] do not meet the high bar for 'specific evidence of improper intent.'" Answering Br. 47. But a plaintiff is not required to submit "specific evidence of improper intent" to survive a 12(b)(6) motion. Rather, "a court may generally consider only the *allegations* contained in the pleadings" on a 12(b)(6) motion—allegations that *must* be accepted as true at this stage. *Weday v. Mayorkas*, No. 2:21-cv-01595-RSM-JRC, 2022 WL 1143227, at *4 (W.D. Wash. Mar. 22, 2022). Taken as true, the Complaint's allegations sufficiently plead a Fourth Amendment violation. SAF's allegations are not "conclusory" simply because State Defendants ignore most of them.

### b. The Complaint sufficiently alleges that State Defendants' conduct violates clearly established law

SAF sufficiently allege a clearly established right because "any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018). State Defendants have no serious argument that they could not have known their conduct was unconstitutional if they targeted SAF for a sham investigation because of SAF's political beliefs. Instead,

State Defendants erroneously contend that SAF failed to "identify[] caselaw that clearly established that a retaliatory investigation per se violates the First Amendment." Answering Br. 49. This is false.

In *White v. Lee*, 227 F.3d. 1214 (9th Cir. 2000), this Court considered retaliatory conduct that is legally indistinguishable from State Defendants' conduct here. *See* 1-ER-156–58; Opening Br. 58. The officials in *White* "directed the plaintiffs under threat of subpoena to produce" voluminous documents, "interrogated the plaintiffs, again under threat of subpoena," sent a letter to the plaintiffs claiming they had "authority to investigate" allegations regarding the plaintiffs supposedly unlawful conduct, falsely told the plaintiffs they had violated laws, and defamed the plaintiffs by informing third parties that "the plaintiffs had 'broken the law.'" 227 F.3d at 1229. The Court denied qualified immunity because "[t]he plaintiffs' claim [was] founded on bedrock First Amendment principles and legal rules" and "the unconstitutionality of each of the [] officials' actions was apparent at the time they acted." *Id.* at 1239.

State Defendants fail to meaningfully distinguish *White*, merely pointing out that the "*entirety* of the officials' act[ion]" in *White* was unconstitutional. Answering Br. 49 (emphasis and alteration in original). SAF's factual allegations regarding the

entirety of State Defendants' actions here would, if true, similarly establish that State Defendants' conduct violated clearly established law. *See* 1-ER-157–58.

### C. SAF alleged valid state law claims

#### i. SAF sufficiently pleaded a claim for abuse of process

SAF sufficiently pleaded a claim for abuse of process. *See* 1-ER-158–59. State Defendants elevate form over function, arguing that the CIDs do not constitute "legal process" because they were issued pursuant to statute rather than the civil rules (which the CID statute expressly references and incorporates). Answering Br. 51-52. This is a distinction without a difference.

For instance, discovery requests can support an abuse of process tort claim if misused. *See, e.g., Hough v. Stockbridge*, 216 P.3d 1077 (Wash. Ct. App. 2009). The cases upon which State Defendants rely reference the invocation of a court's authority because, normally, litigants have no legal authority to issue a subpoena or discovery request without a lawsuit. But here, the CIDs are the functional equivalent of discovery requests outside a lawsuit. RCW 19.86.110(8). There is no logical reason a discovery request should be able to support an abuse of process claim where a CID cannot. *See Shukla v. Sharma*, 07-CV-2972 CBA CLP, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012); *United States v. Powell*, 379 U.S. 48, 58 (1964). Indeed, because CIDs are served outside a lawsuit with only a 20-day objection window, they are even more susceptible to abuse than subpoenas.

What remains of State Defendants' objections are the same tired arguments as before—that SAF failed to plausibly allege that State Defendants issued the CIDs for purposes of harassment rather than collecting evidence of a possible statutory violation. *See* Answering Br. 52-53. State Defendants again ignore the specific allegations giving rise to the inference of State Defendants' malicious motives. *See* 1-ER-151–53, 1-ER-225–27; 1-ER-229–32; 1-ER-234–38; 1-ER-242.

### ii. SAF's claims under the Washington Public Records Act are not premature

State Defendants' argument that SAF's PRA claim is premature because State Defendants have not issued a formal decision denying SAF's PRA request ignores a critical aspect of the PRA claim—that State Defendants violated the PRA *by using a plainly responsive document it had not disclosed during Mr. Gottlieb's deposition*. *See* RCW 42.56.080(6) (public record may be relied on or used by an agency against a party only if parties affected have timely notice). This violation was consummated when State Defendants used the undisclosed document.

Further, the cases State Defendants quote belies their argument regarding their failure to timely provide responsive records. Answering Br. 54. State Defendants ignore Washington precedent that "an agency's inaction, *or lack of diligence in providing a prompt response to a records request* can ripen into constructive denial for purposes of fees, costs, and penalties under the PRA." *Cantu v. Yakima Sch. Dist.*

*No. 7*, 514 P.3d 661, 678 (Wash. App. 2022) (emphasis added). Similarly, "the failure to perform an adequate search is tantamount to a denial of the request." *Id.* And "[i]f an agency has failed to produce records for 'an extended period' after missing an estimated deadline, the requestor may treat the agency's silence as a denial and file suit." *Id.* at 679-80.

The Complaint alleges, at a minimum, constructive denial arising from State Defendants' "inaction, or lack of diligence in providing a prompt response" to SAF's request. State Defendants provided an estimated deadline for its full production of September 15, 2022; yet, a year later, State Defendants still had not made a full production. 1-ER-235–36. Further, State Defendants were knowingly in possession of at least one responsive document before January 12, 2023—the date of Mr. Gottlieb's deposition—that it neither produced nor claimed a right to withhold in the subsequent nine months before the filing of the Complaint. 1-ER-249. *Cf. Progressive Animal Welfare Soc. v. Univ. of Washington*, 884 P.2d 592, 607 (Wash. 1994) (PRA "clearly and emphatically prohibits silent withholding by agencies"). This is an unreasonable delay. The Complaint sufficiently alleges State Defendants' "lack of diligence" and failure "to perform an adequate search," *Cantu*, 514 P.3d at 678, constituting a constructive denial of the PRA request.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order dismissing the case.

DATE: November 12, 2024

CORR CRONIN LLP

*s/ Jack M. Lovejoy*

Steven W. Fogg, WSBA No. 23528
Jack M. Lovejoy, WSBA No. 36962
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com
jlovejoy@corrcronin.com

*Attorneys for Plaintiffs/Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on the date provided at the signature below, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties/counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.

Dated this 12th day of November, 2024 at Seattle, Washington.

By:

*s/ Wen L. Cruz*
Wen L. Cruz

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**: **No. 24-760**

I am the attorney or self-represented party.

**This brief contains 6, 996 words,** including _____ words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _ s/ Jack Lovejoy _____ **Date** 11/12/24
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*